KATIE A. EKSTROM *vs.* CYRUS J. HALL, and others.

Hancock. Opinion April 15, 1897.

*Mortgage. Fixtures. Trover. Damages.*

Fixtures actually or constructively annexed to the realty after the execution of a mortgage of the real estate become a part of the mortgage security, and while the mortgage is in force cannot be removed or otherwise disposed of by the mortgagor, or by one claiming under him, without the consent of the mortgagee.

A mortgagor of real estate in possession cannot, without consent of the mortgagee, give a third party authority to erect buildings on the mortgaged property, so that such third party can hold the buildings against the mortgagee or his assignee.

In an action of trover the question is not, who has the better title as between the plaintiff and defendant. It is incumbent upon the plaintiff to prove property in the articles sued for. This is because the measure of damages in an action of trover is the value of the article at the time of the conversion, and also because the recovery of a judgment and its satisfaction transfers the title to the defendant.

When by reason of erroneous intructions, made for the purpose of giving progress to the case, the plaintiff recovers a verdict covering several items which he is not entitled to, but the amounts are made certain in special findings by the jury, exceptions will be overruled, if the plaintiff will remit the aggregate of such amounts.

ON EXCEPTIONS BY DEFENDANTS.

This was an action of trover, with a verdict for the plaintiff as against defendants, Standard Granite Company and Cyrus J. Hall for the sum of $607.65. Included in the verdict, according to the jurors' answers to special questions framed by the presiding justice,

were the following items: "Carr Boarding House," valued at $300. "Small house on quarry," valued at $50. "House on land of Mrs. O'Dell," valued at $102.

The plaintiff claimed title to these three houses as her personal property and that they had been converted by defendants to their own use. Defendants claimed that the houses were real estate (that is, the "Carr Boarding House" and "Small House on quarry") and that title to these two houses was in defendant, Standard Granite Company, by virtue of a deed of the land upon which they stood from one Carr and an assignment and foreclosure of a mortgage upon the same land, which mortgage has also been given by Carr.

These two houses were built upon the land by the plaintiff with Carr's consent after the mortgage by Carr to Newman and with the understanding, between the plaintiff and Carr, that they were to be and remain the property of the plaintiff.

The other facts appear in the opinion.

*H. E. Hamlin*, for plaintiff.

If the structure be of a temporary character; if it be placed upon the land for a temporary purpose and in such manner that it can be easily removed without injury to the freehold; and if it be placed there by a third party under permission of a mortgagor in possession with the express understanding and intention that it shall remain personal property and be removable at the pleasure of the builder, then, as between said third party and a mortgagee who had taken his mortgage before the building was erected, it remains personal property and cannot be held by the mortgagee.

While as between mortgagor and mortgagee some authorities favor the mortgagor's right to remove, it seems that the weight of authority is the other way. But, as between a tenant of the mortgagor and the mortgagee, the rule is not applied with the same strictness, and the rights of the tenant are more certain and absolute.

In the case at bar, the buildings were mere shells placed upon the land for the mere temporary convenience of the plaintiff to

enable her to carry on the business in which she was engaged. The character of plaintiff's business (that of carrying on a small quarry business under a tenancy at will and providing a boarding place for the men in her service) indicates that she placed these buildings upon the land only for the purpose of conducting her business advantageously and with no intention of making them a part of the realty. The mortgagor understood this intention and expressly assented to it. The buildings were erected with the express idea of making them easily removable and were not affixed to the soil in such manner as to give them the appearance of substantial and permanent structures.

Counsel cited: *Kelly* v. *Austin*, 46 Ill., 156 (92 Am. Dec. 243); *Globe Marble Mills Co.* v. *Quinn*, 76 N. Y. 23 (32 Am. Rep. 259); *Tifft* v. *Horton*, 53 N. Y. 477 (13 Am. Rep. 537); 1 Jones on Mortgages, 3d Ed., §§ 341, 432, 433.

In the case of *Wight* v. *Gray*, 73 Maine, 297, it was probably assumed that the building was put upon the land for its permanent improvement, for the benefit of the wife as well as the husband, and with the purpose at the time it was so placed to redeem the mortgage. Our case is that of an entire stranger to both mortgagor and mortgagee, with no inducement to make any permanent erections upon the land.

So, in *Meagher* v. *Hayes*, 152 Mass. 228, the building was permanent in its character.

*A. W. King and O. F. Fellows*, for defendants.

Counsel cited: *Butler* v. *Page*, 7 Met. 42; *Cole* v. *Stewart*, 11 Cush. 182; *Meagher* v. *Hayes*, 152 Mass. 228; *Clary* v. *Owen*, 15 Gray, 525; *Guernsey* v. *Wilson*, 134 Mass. 482; *Childs* v. *Dolan*, 5 Allen, 319; *Hunt* v. *Hunt*, 14 Pick. 374; 1 Jones on Mortgages, p. 552, § 681; Boone's Law of Mortgages, p. 139, § 103; *Humphreys* v. *Newman*, 51 Maine, 40; *Lapham* v. *Norton*, 71 Maine, 83; *Wight* v. *Gray*, 73 Maine, 297; *Phinney* v. *Day*, 76 Maine, 85.

The action of trover is not applicable to real estate. Vol. 26 Am. & Eng. Enc. Law, p. 774; *Morrison* v. *Berry*, 42 Mich. 389; *Woodruff Iron Works* v. *Adams*, 37 Conn. 233.

SITTING: WALTON, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

WISWELL, J. The plaintiff sued for the conversion of, among other things, "one house known as the Carr boarding-house," and "one small house on the quarry." The plaintiff claimed and introduced evidence tending to show that these houses were built by her upon the land of one Carr, with the permission of the landowner and under an arrangement with him that the houses were to be hers.

But the land upon which these houses were built was subject to a mortgage to one Newman, of whom Carr had bought, given upon the same day as the conveyance to Carr. Newman commenced a foreclosure of the mortgage, and before the time of redemption had expired, assigned it to the defendants, Hall, Warren and Mixer, who subsequently conveyed the same property to the defendant corporation, the Standard Granite Company. The defendants were in possession of the real estate under a deed from Carr and under the assignment of the mortgage from Newman.

The houses were both built after the execution of the mortgage to Newman and while it was held by him. There was no evidence introduced in the case of any agreement, arrangement or understanding of any kind between the plaintiff and the mortgagee in regard to the building of these houses, nor was it claimed by the plaintiff that there was any such arrangement.

Counsel for defendants requested this instruction: "That these defendants are not liable in this action for the buildings, described in the writ as the Carr boarding-house, nor for the little house described in the writ as on the Carr quarry, because the title to those houses is in the defendants by virtue of the mortgage from Carr to Newman, given before the buildings were built, there being no evidence in this case that those buildings were built upon the land covered by the mortgage by the consent of the mortgagee."

The presiding justice refused to give this instruction, but, in order to give progress to the case, instructed the jury as follows: "It is enough if Mr. Carr, who was the mortgagor and in posses-

sion, agreed to it, the building having been put on after the mortgage. . . . . Therefore, I wish you to understand distinctly that I rule that Mrs. Ekstrom is not bound to show that the mortgagee consented to this arrangement. It is enough for her to show that Mr. Carr, the mortgagor in possession, did consent to it, if he did."

The effect of this instruction was that a mortgagor in possession can give a third party authority to erect buildings on the mortgaged property, without the consent of the mortgagee, so that such third party can hold the buildings against the mortgagee or his assignee. This is not the law.

Fixtures actually or constructively annexed to the realty after the execution of a mortgage of the real estate become a part of the mortgage security, and while the mortgage is in force, can not be removed or otherwise disposed of by the mortgagor or by one claiming under him without the consent of the mortgagee. *Wight* v. *Gray*, 73 Maine, 297. The precise question here involved was decided in the case cited. In that case the building in controversy was erected upon mortgaged premises, by the husband of the mortgagor, with her consent, but without the consent of the mortgagee. The court held that, as to the mortgagee, the building was a part of the realty.

In *Meagher* v. *Hayes*, 152 Mass. 228, it was decided that a building put upon mortgaged land by the consent of the mortgagor, but without the consent of the mortgagee, was clearly, as to the mortgagee, a part of the realty. Numerous other cases to the same effect might be cited.

In such cases the question must be determined by the rule which prevails between mortgagor and mortgagee and not by that which prevails between landlord and tenant. *Wright* v. *Gray*, supra.

It is contended by the counsel for the plaintiff that the rule does not apply to the present case, because of the temporary character of the buildings and the manner in which they were annexed to the soil. Of this the case discloses nothing, but it was the evident intention of the court in giving these explicit instructions, to reserve the precise question which we have discussed, as to whether

buildings erected by third persons upon mortgaged premises, with the consent of the mortgagor, but without the consent of the mortgagee, remain the personal property of the builder, without regard to the character of the buildings or the manner in which they are annexed to the soil.

Another of the articles sued for in the plaintiff's writ, was a house described as, "one house on land of Mrs. O'Dell." The land on which this house was built was owned by one Mrs. O'Dell. The plaintiff claimed that she bought the house of two men who were living in it. There was no evidence introduced that it was built on this land by the permission or with the consent of the landowner. The defendants did not claim this house as belonging to any real estate of theirs. Counsel for defendants requested these instructions: "That the plaintiff cannot recover in this action for the house described in the writ as on the O'Dell land because said house is real estate; that if the O'Dell house was built without the consent of the owner of the land it became real estate."

The presiding justice declined to give these instructions, but did instruct the jury as follows: "Therefore, I rule that it does not matter to them (the defendants) whether or not Mrs. Ekstrom had any agreement with Mrs. O'Dell or not, inasmuch as they (the defendants) claim it as personal property and do not own the land on which it stands, and do not claim that they do. It is not for them to ask Mrs. Ekstrom to show the separation of the house from the land, because they themselves have taken it as personal property. Therefore, the simple question for you is, as between these parties, which owns the house on the O'Dell land. Is Mrs. Ekstrom's title to the house on the O'Dell land better than the title of these defendants? Did she acquire a title first? If she got the title first and has not parted with it, of course it is a better title than theirs."

We think that this instruction was also erroneous. In an action of trover the question is not, who has the better title as between the plaintiff and defendant. It is incumbent upon the plaintiff to prove property in the articles sued for. This is because the

measure of damages in an action of trover is the value of the article at the time of the conversion, and also because the recovery of a judgment and its satisfaction transfers the title to the defendant. If this were not so, the unjust and inequitable result would follow that a defendant after he had satisfied a judgment for the full value of personal property converted by him, in favor of a plaintiff who merely had a better right to the property than the defendant had, would still be liable to the actual owner for the same conversion and according to the same measure of damages.

To maintain the action of trover it is necessary that the plaintiff should appear to be the legal owner of the goods and entitled to the possession of them. *Haskell* v. *Jones*, 24 Maine, 222.

"The cases cited in argument for the defendants establish the position, that the defendant in an action of trover may prove that the title to the property claimed was, when the suit was commenced, in a third person, and thus defeat the action. If he could not, he might subsequently be compelled to pay for the same property again to such third person, he being a stranger to the first suit." *Clapp* v. *Glidden*, 39 Maine, 448.

This house was on the land of another. Unless it was built with the landowner's permission, it was a part of the realty and the property of the owner of the land. The plaintiff failed to show such permission, or that the house was built under any circumstances, which would make it a personal chattel. The plaintiff, therefore, cannot recover for its conversion for two reasons. She was not the owner of it; trover only lies for the conversion of chattels.

The amounts allowed by the jury for these three buildings, and included in their general verdict, are made certain by the jury's answers to special questions submitted by the court. These amounts aggregate $452. If the plaintiff will remit this sum, the exceptions will be overruled, otherwise they will be sustained. The entry will be,

> *Exceptions overruled, if the plaintiff, within thirty days after the receipt of the rescript by the clerk, will remit the sum of $452. as of the date of the verdict; otherwise, exceptions sustained.*