| 14 | 21|
|c20 | 469|

[No. 1660.]

FISK v. THE PEOPLE'S NATIONAL BANK ET AL.

1. MORTGAGES—INJURY TO MORTGAGED PROPERTY.

An action may be maintained by a mortgagee or beneficiary in a deed of trust for an injury done to the security.

2. MORTGAGES— FIXTURES—CHATTEL MORTGAGES.

Where real estate was purchased for the purpose of manufacturing brick and a deed of trust was given by the purchasers to secure the purchase price, and the purchasers afterwards placed upon the land heavy machinery fastened to a brick foundation sunk in the ground, inclosed by brick sheds to be permanently used in connection with the land in the manufacturing of brick, held that the machinery became a part of the real estate and subject to the deed of trust and that a chattel mortgage on the machinery executed after it was attached to the real estate, conveyed no right to the machinery as against the beneficiary in the trust deed.

3. SAME— VERBAL OFFER TO GIVE CHATTEL MORTGAGE.

A verbal offer of a mortgagor to give a chattel mortgage on certain machinery to be attached as fixtures to the mortgaged premises which was not accepted until after the machinery was attached

and became a part of the real estate vested no right to the machinery in the chattel mortgagee as against the beneficiary in the real estate mortgage or deed of trust.

4. DEED OF TRUST—POWER OF TRUSTEE—ESTOPPEL.

The trustee in a deed of trust has no power to make any contract in relation to the property outside of the power given him in the deed, and an agreement or promise by him to the holder of a chattel mortgage on certain machinery attached to the real estate, that the *cestui que trust* would not contest the validity of the chattel mortgage would not be binding on the *cestui que trust* nor estop him from afterwards setting up his superior rights or from suing for damage to the real estate by a foreclosure of the chattel mortgage and removal of the machinery.

*Error to the District Court of Arapahoe County.*

Messrs. ROGERS & SHAFROTH, for plaintiff in error.

Mr. CASS E. HERRINGTON, Mr. FRED HERRINGTON and Mr. H. C. VAN SCHAACK, for defendants in error.

THOMSON, J.

On June 19, 1890, Mary E. Fisk sold and conveyed to John McCain, Louis F. Groth and Ferdinand B. Becker a number of lots in Fisk's addition to the town of Fairview, in Arapahoe county, for the sum of $23,000. Of the purchase price, they paid $3,000 in cash, and executed four notes for the residue,—one for $2,000, due September 12, 1890, and three for $6,000 each, due respectively on the 12th day of June, 1891, the 12th day of June, 1892, and the 12th day of June, 1893, all with interest from date. The payment of these notes was secured by a deed of trust upon the premises sold, which was duly recorded on the 23d day of June, 1890. After the execution of the trust deed, McCain, Groth and Becker placed upon the premises three brick sheds, a seventy-five horse power engine, two boilers, a brick machine, and certain other machinery and apparatus, to be used in the manufacture of brick. Before this machinery was placed upon the premises, these parties were indebted to the People's Na-

tional Bank of Denver, in the sum of $15,000, and on the 4th day of December, 1891, long after the machinery was so placed, to secure the payment of that indebtedness, they executed to Frederick Schrader a chattel mortgage of the improvements, engine, boilers, machinery and apparatus, which they had placed upon the land. On the 18th day of December, 1891, the debt to the bank being due, Schrader and the bank took possession of the property enumerated in the chattel mortgage, and caused it to be sold at public auction,—the purchasers being Charles W. Larmon and Flavius N. Davis, who afterwards entered upon the premises and removed the property therefrom. On the 12th day of May, 1892, on account of default by McCain, Groth and Becker in the payment of their second note to Mrs. Fisk, which default, by the terms of the deed of trust, authorized foreclosure for the entire indebtedness, Mrs. Fisk caused the premises to be advertised for sale and sold in the manner provided by the trust deed, realizing $4,600 from the sale, which was credited upon the indebtedness which the trust deed secured. She brought this action against Schrader, the bank, McCain, Groth, Becker, Larmon and Davis, to recover damages for the impairment of her security by the sale and removal of the improvements, machinery and apparatus, alleging that they were so annexed to the real estate as to be part of it, and were, therefore, subject to the lien of her deed of trust.

The answer admitted the placing upon the premises by McCain, Groth and Becker of the articles of property described in the complaint, but denied that they were placed there as permanent fixtures or improvements, averring that they were personal property, and were put upon the land solely for the purpose of carrying on the business of manufacturing brick, and were at all times subject to removal. The answer also averred that McCain, Groth and Becker were partners, engaged in the manufacture of brick, and that the land was sold to them by the plaintiff, and was obtained by them for the purposes of carrying on their trade and business as partners; and that their indebtedness to the bank

was for money borrowed by them to provide machinery for carrying on their business upon the property, and was spent by them in the purchase of the machinery and the erection of the buildings mentioned in the complaint. The answer further stated that Schrader and the bank were induced to proceed with the sale of the property on their chattel mortgage, by the assurance of Archie C. Fisk, the agent of the plaintiff, that the plaintiff would make no further claim upon the property, and that except for such assurance they would not have sold it. The replication denied any assurance by Archie C. Fisk, and denied that he was the agent of the plaintiff, or had any authority to speak for her concerning the property.

The evidence was that the boilers were placed on brick foundations, sunk in the ground, and were walled in with brick; and that the engine and brick machine were also laid on brick foundations, sunk in the ground, and attached to the foundations by iron rods or bolts. All of this machinery was massive and heavy, and the other apparatus was connected with it by proper appliances. The machinery was enclosed in buildings erected by McCain, Groth and Becker and was adapted to, and used in, the manufacture of brick. The brick was to be manufactured out of clay from the land sold by the plaintiff. At the time of the foreclosure of the chattel mortgage, about 5,000,000 brick had been made, and it was estimated that there was enough clay upon the land to make 100,000,000. In making these brick the land was excavated, in places, to a depth of twenty-two or twenty-three feet, and on portions of the ground the clay was sixty feet deep. In August or September, 1890, Mr. Groth, for himself, McCain and Becker negotiated a loan at the People's National Bank of $5,000, stating that they wanted the money to buy a boiler, engine and other machinery, and proposing to give the bank a chattel mortgage on the property whenever the bank might ask for it. Of the money loaned, $2,000 was placed to their credit first, afterwards $2,000 more, and subsequently the remaining $1,000. They drew checks against this money,

together with other moneys deposited by them for all purposes. Afterwards they ordered more machinery, and applied to the bank for a further loan of $10,000. After some discussion among themselves, the officers of the bank acceded to their request, and they executed their note for the amount to the bank with a Mr. Hart as security. They then again offered to give the bank a chattel mortgage of the property whenever it might want such security. Prior to the time when the chattel mortgage was finally given, all of the notes were several times renewed, and at each renewal the makers repeated their offer of a chattel mortgage, to be executed whenever it might be wanted. On the 4th day of December, 1891, about a year after the last sum was borrowed, and the machinery and improvements placed upon the ground, the chattel mortgage which had been offered was given at the request of the bank, and two or three weeks afterwards, the mortgagee took possession of the property and sold it. It was admitted that from the time the firm commenced business, down to the time of the execution of the chattel mortgage, it deposited in this bank, in addition to the amounts borrowed, the sum of $68,000, the proceeds of its business, and drew its checks from time to time against the entire fund for the general purposes of its business.

Mr. Lawrence, an officer of the bank, testified that about a week before the sale took place, he had a conversation with Archie C. Fisk, on the subject of the proposed sale. Mr. Fisk was the trustee named in the trust deed. Mr. Lawrence said he was told by Mr. Schrader that the bank had been notified by Mr. Fisk that he objected to selling the property; that he (witness) immediately looked Mr. Fisk up, and explained to him the circumstances under which the money was loaned, and the chattel mortgage taken, and that Mr. Fisk said he had not understood the matter and remarked: "Mr. Lawrence, if that is a fact, I don't think I ought to disturb you; if the way you stated to me, which I have no reason to doubt, I don't think I ought to disturb you; go ahead, Mr. Lawrence, I don't think I will give you any trouble." The

witness further said that when he repeated the conversation to the bank, it proceeded with the sale. Mr. Fisk, testifying with regard to the same conversation, said that what he told Mr. Lawrence was, that he (Fisk) had signed the notice as trustee, that he did not own the note, that under his (Lawrence's) statement of facts there might be something in the claim, but he could not say until he should confer with his attorneys; and, when he did, if their views coincided with Lawrence's, he would notify the bank that he had no further objection.

There was evidence from which, if the case made by the plaintiff entitled her to a recovery, the injury to her security might be estimated. The judgment was against her, and she brings error.

We have held that an action may be maintained by a mortgagee, or the beneficiary in a deed of trust, for an injury done to the security. *Vaughn v. Grisgby*, 8 Colo. App. 373. This suit was, therefore, properly brought.

Whether, as between the immediate parties to the trust deed, the articles of property in controversy were so annexed to the real estate as to become part of it, depends upon the character of the articles, the manner of their annexation, the uses to which they were to be applied, and the intention with which they were annexed. It appears from the answer that the purchasers of the land were partners in the business of manufacturing brick, and that the land was bought by them to be used in carrying on their business. The machinery was heavy and massive; it was such machinery as is necessary in the manufacture of brick; it was purchased to be used upon the land; it was laid upon and fastened to brick foundations sunk in the ground; the appendant articles were appliances to be used in operating the machinery, and during the time the business was carried on, all the machinery and appliances were devoted to the uses for which they were placed upon the land. In purchasing both the land and machinery, the copartnership had the same object in view, and they were to be used together for the same purpose. To carry on their

business, they needed both the land and the machinery, and not till they had united the two were they prepared to proceed. It abundantly appears that these chattels were actually annexed to the real estate, and were annexed in such manner as to evidence an intention that they were to remain permanently in their place, and they were put there to be applied to the same purposes to which the real estate was appropriated. In using the word "permanently" we do not mean perpetually. That chattels may be permanently an accession to the land, a purpose that they should remain there forever, or even until they are worn out by use, is not necessary. It is sufficient that their situation is to be as permanent as the business in which they are to be used, and the intention with which they are placed, is to be sought in the surrounding facts and circumstances, and not in the secret mental operations of the parties.

The machinery was placed upon the land after the trust deed was executed; but that fact does not affect the question whether it became an accession to the real estate. If it did, and that it did we have no doubt, it was incorporated with the land; the two became an entirety, and, together, constituted the plaintiff's security. We have no hesitation in expressing the opinion that as between the plaintiff and the grantors in the trust deed, the property in controversy was unified with the real estate, and that upon default in the payment of the debt secured, she was entitled to resort for indemnity to the land and fixtures together. *Roseville A. M. Co. v. Iowa G. M. Co.*, 15 Colo. 29; *Climie v. Wood*, 3 Exch. 256; *Winslow v. Merchants Insurance Co.*, 4 Met. (Mass.) 306; *Hopewell Mills v. Taunton Savings Bank*, 150 Mass. 519; *Feder v. Van Winkle*, 53 N. J. Eq. 370; *Cunningham v. Cureton*, 96 Ga. 489; *Fifield v. Farmers' National Bank*, 148 Ill. 163; *Jones v. Bull*, 85 Tex. 136; *Voorhees v. McGinnis*, 48 N. Y. 278; *Porter v. Pittsburg Steel Co.*, 122 U. S. 267.

The intention with which the machinery was placed upon the ground is apparent from the general facts; but this case

possesses a feature peculiar to itself, which gives emphasis to the other evidence. Not only did the transaction between the plaintiff and the purchasers from her, contemplate the use to which the land was to be put, and the placing upon it, of machinery like this, but it also contemplated the constant diminution of the value of the land, by covering it with deep excavations, and denuding it of its clay, so that unless the plaintiff should have the benefit of the accession to the real estate, her security might become practically worthless.

Having concluded that as against the plaintiff the makers of the trust deed could lay no claim to the machinery, we shall now consider the situation of the holders of the chattel mortgage, and the purchasers at the chattel mortgage sale, in relation to the property. Whatever rights they may have had, were derived from an oral understanding between the mortgagors and the mortgagee at the time of the contraction of the indebtedness to the bank. It is contended on behalf of the plaintiff that the promise of McCain, Groth and Becker, when they borrowed the money, to secure it by a mortgage on the machinery at some future time if so required, created an equity superior to that of the beneficiary in the trust deed, and entitled the mortgage which was finally given to priority over the plaintiff's lien; and counsel support their position by reference to a number of authorities, some of which we shall specially examine. In *Tifft v. Horton*, 53 N. Y. 377, the plaintiff manufactured the machinery for a Mrs. Brown, under a written contract. By the terms of the contract the machinery was to be put up and used in an elevator Mrs. Brown was building, and she was to give for a portion of the purchase price her promissory notes secured by a mortgage on the machinery. The machinery was completed according to the contract, and, while it was still in the plaintiff's shop, the mortgage was given. The instrument provided that the machinery should remain personal property until the notes were paid, notwithstanding the manner in which it might be placed in the elevator, and authorized the plaintiff, in case of default, to enter the elevator and take it away. The

defendants claimed title through three real estate mortgages executed before the machinery was placed upon the premises. The court held that the machinery was subject to the chattel mortgage, saying that by the agreement of the then owner of the land with the plaintiff it was to remain personal property until the notes were paid, and that although the intention of the owner of the land was that the machinery should ultimately become part of the realty, yet that purpose was subordinate to the prior intention expressed in the chattel mortgage. In *Binkley v. Forkner*, 117 Ind. 176, a chattel mortgage had been given for the purchase price of an engine, boiler, shafting and other machinery, while the articles were still in the possession of the vendors. The mortgage provided that the machinery should be treated as personal property until the notes were paid. It was afterwards placed upon, and attached to, land of the vendee, upon which he had executed a mortgage. It was held that as to the machinery, the chattel mortgage was entitled to precedence. In *Case Mfg. Co. v. Garven*, 45 Ohio St. 289, by agreement of the parties at the time of the purchase, the title to the property was to remain in the vendor until it was paid for. At the time when and the place where the agreement was made, it was valid and enforcible even against an innocent purchaser, and it was upheld against a subsequent mortgage of the real estate to which the property had been annexed. The other cases to which we are referred are similar in their main features to the foregoing, and need not be specially noticed. But before inquiring whether any of them can be regarded as applicable to the case in hand, we think it well to call attention to an important qualification of the doctrine of *Binkley v. Forkner*, contained in the opinion in which the doctrine is announced. The court held that if the detachment of the mortgaged chattels would materially affect the security of the real estate mortgagee, the claim under the chattel mortgage would not prevail over the prior real estate mortgage. It is clear that by reason of the uses to which the land here was put, the detachment of this machinery did

seriously and injuriously affect the security of the plaintiff. We may say further that the doctrine of able courts is that an agreement by the mortgagor that an accession to real estate shall be the property of another until an indebtedness to the latter, whether for the purchase price or not, shall be discharged, is invalid as against the holder of a prior real estate mortgage. *Tarbell v. Page*, 155 Mass. 256; *Exstrom v. Hall*, 90 Me. 186; *Porter v. Pittsburg Steel Co.*, *supra*.

But, giving the decisions which have been urged upon us the utmost effect which their language will warrant, we do not see how the present case can be brought within them. Either the title to the property had never passed out of the vendor, so that he was entitled to follow it wherever it might be found, or before it had left his possession, he had secured himself by a chattel mortgage upon it for the unpaid purchase price, so that, as to him, it remained personal property until the debt was paid. Whether he claimed as conditional vendor or mortgagee, he had a valid legal interest in the property, which could not be divested without his consent. Nothing like that appears here. The holders of the chattel mortgage never were the owners of the machinery. It never was in their possession. The indebtedness to the bank was contracted, apparently, to enable the borrowers to pay, wholly or partially, for this machinery. The money was placed in their general account, which included other moneys belonging to them. How much, if any, of this particular money, they used in paying for the property, is uncertain, and is as unimportant as it is uncertain. There was no contract which entitled the bank to interfere with any disposition which they might conclude to make of the machinery. There was an offer or a promise which amounted to nothing more than an offer, by them, to give the bank a mortgage upon it; but until there was an acceptance of the offer, there was no contract, and the offer was not accepted until the bank demanded the mortgage a year afterwards, and then, the acceptance was too late. In the mean time, McCain, Groth and Becker, the owners of the machinery, in the exercise of their un-

questioned right to do with it as they might see fit, annexed it to the land; the lien of the plaintiff's trust deed attached to it as part of the real estate, and it was thenceforth out of their power to make any disposition of the property detrimental to her; so that, by the chattel mortgage which it took, the bank acquired no right in the machinery as against the plaintiff.

The remaining question is whether the plaintiff is estopped to assert her rights by reason of the conversation between Lawrence and Archie C. Fisk. Mr. Fisk was the trustee who held the title to the real estate as security for the debt to the plaintiff. By the terms of the trust deed, he had authority to advertise and sell the land, in case of default by the makers of the notes ; to execute a deed to the purchaser; and to apply the net proceeds in discharge of the debt. The deed gave him no further power, and there is nothing in the record to show that any additional power was otherwise conferred. As far as we can see, the only agency he possessed was that created by the deed. He had, therefore, no authority to make any outside contract in relation to the property. Whatever assurance he may have given the bank that the plaintiff would make no claim upon the machinery, was not binding on her, and, as against her, was not an estoppel. But even if the fact had been otherwise, the language which the witness put into his mouth, was not the assurance which the defendants pleaded. The answer alleged that they were induced to proceed with the sale by the assurance of the plaintiff, through Archie C. Fisk, that she would make no further claim upon the property, and that but for such assurance, there would have been no sale. But the proof fell far short of the averment. As to what Mr. Fisk said we accept the testimony of Mr. Lawrence, rather than that of Mr. Fisk, because the court found for the defendants ; but, considering as a whole the language of Mr. Fisk as it was given by Mr. Lawrence, and in order to ascertain what Mr. Fisk intended by it, it must be so considered, we find in it no promise that the plaintiff would

submit to the sale. It contained nothing but the opinion of Mr. Fisk upon the statement of Mr. Lawrence. If that statement was true, he thought the claim made by Mr. Lawrence was good, and it would not be right to gainsay it. Of course, if the statement was not true, his conclusion would be different; until the truth of the statement should be tested, there was no conclusion, and what he might finally think would depend upon an investigation of the facts. This is all that a close analysis enables us to extract from the language of Mr. Fisk. How an estoppel can be predicated upon a hypothetical expression of opinion, our researches have failed to reveal to us.

We believe that the articles of machinery were fixtures; that the plaintiff's deed of trust covered them; and that their detachment from the land was an impairment of her security.

The judgment will therefore be reversed.

                                        *Reversed.*