THE EQUITABLE GUARANTEE AND TRUST COMPANY, a corpor-
ation of the State of Delaware, Trustee appointed by the
Chancellor under the will of Victor Green, deceased,
Assignee of James J.. Ross, Trustee appointed by the
Chancellor under the will of the said Victor Green, de-
ceased, who was assignee of Thomas H. Gilpin, Execu-
tor of William Green, surviving Trustee of William
H. Ross and William Green, Trustees under the will of
the said Victor Green, deceased, who were assignees of
John Drummond, who was the assignee of Joshua B.
Fennimore, mortgagee,

*vs.*

MARGARET W. HUKILL, Administratrix of Gideon E. Hukill,
deceased, and SHORT AND WALLS LUMBER COMPANY, a
corporation of the State of Delaware.

*New Castle, Dec.* 9, 1912.

A lease of land, made after mortgage of it, having authorized the
lessee to erect on the premises a building for trade purpose and remove
it during the term, the lessee may, as against the mortgagee, during the
term, the mortgage not having been foreclosed, remove it; it not being
shown that the original security will be thus impaired.

INJUNCTION BILL.    On November 10, 1875, Letitia L.
Green purchased from Joshua B. Fennimore certain land sit-
uate in the town of Middletown and gave to him a bond and
mortgage for the full amount of the purchase price thereof.
Through sundry assignments the said bond and mortgage
were assigned to the trustees under the will of Victor Green,
and are now held by The Equitable Guarantee and Trust Com-
pany, the present trustee under said will by appointment of the
Chancellor.

Subsequent to the purchase of the premises Letitia L.
Green leased a portion of the lands from year to year from
January 1st, to Gideon E. Hukill for the purpose of conducting

a lumber yard and for the sale of general building material. On March 29, 1881, Letitia L. Green entered into an agreement with Gideon E. Hukill, who at that time was a holding-over tenant from year to year, whereby he was granted "the privilege of erecting at his individual expense on the said lumber yard a frame building suitable for the storage of moldings, sash, doors and other millwork together with other cumbrous or heavy articles of merchandise in connection with his business. Also to build at his expense such shedding as he may require to protect his lumber from rain and storms, and that he may at any time when he may so desire, remove without objection or hinderance from the land of the said party of the first part [the lessor] any, or all, of the buildings or shedding that he may have erected thereon at his individual expense under this agreement." On December 8, 1881, a further agreement was entered into by the lessor and lessee, whereby the lessee was granted the privilege of erecting on said premises a frame building to be used for a stable and carriage house, with the privilege of removing it at any time.

Subsequent to the execution of the agreements the lessee erected at his own expense a large warehouse, sheds for storing lumber and a stable and carriage house. The bill alleged that all of the buildings are well and substantially built, have shingle roofs, and are annexed to the soil by brick or stone piers or foundations let into the ground about one and one-half feet; that the buildings were appraised at the sum of four hundred and fifty dollars by the appraisers of the personal estate of Gideon E. Hukill, who died October 27, 1911, but have a much greater value if permitted to remain attached to the freehold.

After the death of Gideon E. Hukill, his administratrix, Margaret W. Hukill, who is in possession of the premises for a term ending January 1, 1913, offered the buildings and sheds for sale, under protest of the complainant, as part of the personal estate of Gideon E. Hukill, and they were purchased by Short and Walls Lumber Company.

The bill also alleged that one or more children of Victor Green, who are the beneficiaries in remainder under the will,

are now living; that the buildings are fixtures, and when erected became subject to the lien of the mortgage and still remain subject to the lien thereof, notwithstanding the agreements of the mortgagor with the lessee; that the property covered by the mortgage, including the lands described in the bill, is not of sufficient value to pay the mortgage, and the removal of the buildings would subject the complainant to great and irreparable injury; and that Margaret W. Hukill, administratrix as aforesaid, and Short and Walls Lumber Company threaten to remove the buildings unless restrained.

The prayers of the bill, other than those for answer, subpoena and other relief, are:

"That the Chancellor may make and enter a decree finding that the said buildings are fixtures and, when erected, became subject to the lien of said mortgage, and still remain subject to the lien thereof.

"That the said defendants, and each of them, may be perpetually enjoined and restrained by the injunction of this honorable court from removing, or attempting to remove, said buildings, or any of them, from the premises hereinbefore described, or otherwise interfering therewith."

The answer averred that the buildings were necessary for carrying on the business and trade for which the premises were demised to Gideon E. Hukill, and were erected thereon and used for no other purpose than that of trade fixtures; that the buildings are not attached to the freehold any further than by their own weight resting upon stone or brick piers; and are capable of being removed without any damage to the freehold.

Upon motion of the solicitors for the complainant, the cause was heard on bill and answer.

*Saulsbury and Morris* for the complainant.
*Martin B. Burris*, for the defendants.

THE CHANCELLOR. The point involved is whether a mortgagee can enjoin the removal of buildings erected for a trade or business purpose upon the mortgaged premises by

authority of the lessor, who was also the mortgagor, given to the lessee under a lease made subsequent to the mortgage, and by the terms of which the lessee had a right to sever and remove the buildings during the term, which has not yet expired but is still continuing and unsurrendered.

It does not appear whether the value of the security for the mortgage debt will be depreciated by the removal below that which existed when the mortgage was made. By the bill it is alleged that the mortgaged premises are not sufficient security, meaning thereby probably that they are insufficient if the buildings be removed; and it is further alleged that the removal would cause great and irreparable injury to the complainant. From the answer it appears that the buildings can be removed without damage to the freehold. Whether or not the complainant had notice or knowledge of the lease and the erection of the buildings is not alleged or denied by either party. Nor is it, of course, alleged that the mortgagee consented to the annexation, or assented to the lease in any way. It is unnecessary to consider whether there was, in legal effect, an annexation, for it appears that there was an actual physical annexation to the land of the buildings in question. The first consideration is whether by the decisions of our own courts the case can be decided and a review of them is necessary.

The case of *Rice v. Adams, et al.*, 4 *Harr.* 332 (1845), is an early decision that real fixtures such as steam engines, boilers cupola and other equipment for a foundry erected by the owner and by him attached to the land, not for a temporary purpose but as a fixed establishment, acquired the character of real property, and as such was subject to the lien of a judgment against such owner. Prior to the entry of the judgment the owner made a parol sale of the equipment to a new firm, of which he became a member. Subsequently a second judgment creditor of the owner of the land levied on the equipment as personal property. But it was held that being realty the equipment was not subject to be so seized as personalty.

This case does not control the case under consideration in which the tenant by authority of a written agreement with

his lessor attached improvements for trade purposes, with an express right to remove them.

The case of *Watertown, etc., Co. v. Davis*, 5 *Houst.* 192 (1877), would seem at first to be conclusive of the question in this case. There the plaintiff agreed with Holmes, who had previously mortgaged his land to Davis, to erect on the mortgaged premises a saw mill and equipment, including an engine and boiler, which equipment ·it was agreed should continue to be the property of the vendor until paid for; and in case of default in the payment of the purchase price the vendor could by the agreement, enter and remove the property sold. Subsequently the mortgage was foreclosed and the mortgagee, Davis, became the purchaser. The vendor, the plaintiff, demanded re-delivery of the equipment because of default of payment by its vendee, and on refusal brought an action of trover for the value thereof. The court did not find fault with, but upheld the form of the action. It sustained the contract of sale as valid. It was held, however, that if the vendee, who had no title to the equipment as against his vendor, annexed the equipment to the mortgaged land in such way as to make it a part of the realty in legal contemplation, the rights of the prior mortgagee would attach, not only as against the mortgagor, but also as against the vendor of the mortgagor. It would seem to follow that if a mortgagor has no power to make an agreement with a third person, such as a vendor of a chattel, by which the chattel annexed shall remain the property of the vendor as against the mortgagee, then the mortgagor could not, by lease made subsequent to the mortgage, grant to the lessee the right to remove trade fixtures as against the mortgagee. *Tiffany on Landlord and Tenant, p.* 1619. But the two cases are distinguishable. Clearly the theory on which the court in *Watertown, etc., Co. v. Davis*, reached its conclusion was that established in *Rice v. Adams*. After referring to that case, the court, alluding to fixtures, such as machinery, fixed by the owner to his land said:

"When these are attached to the land by the owner in a permanent manner, and not for a mere transitory purpose, with such circumstances as indicate a purpose or intention on his part to connect them permanently

with the soil or buildings upon it in order to the pursuit of a permanent employment or occupation, they cease to have the character of chattels or movable goods, and become part and parcel of the land, just as much as the doors or window-shutters upon the house are, which, though removable in most cases, by simply lifting them from their hinges, are yet as much part of the land itself as a tree growing upon it or a rock under its surface."

And again it was said later:

"And in the case of machinery set upon the premises by the owner, as in this case, the question rather is, are the things affixed, set or erected or fastened to the freehold for a temporary or permanent purpose? and if the purpose is shown to be permanent, as to carry on an employment or business, or if it be an improvement to the property enhancing its value, it should be treated, especially if the adaptation of the means to the end is shown to be appropriate and fit, as being indicative of a design to incorporate the machinery with the freehold and make it part of it, and as such you should regard it. When the attachment of the chattels is thus complete, so that they become part and parcel of the freehold, like the buildings, the fences, and other improvements of a permanent character, the owner of the land himself cannot detach or remove them and change their character back into personalty to the prejudice of a creditor who has a mortgage upon the premises; for to do so, if the value of the lien of the mortgage should be seriously impaired thereby, would be an act of waste, to prevent the commission of which the mortgagee could obtain relief in equity by injunction or by writ out of the Superior Court."

From this it will be seen that from the facts in such cases the court makes a legal inference of an intention to annex the structure, equipment or improvement and so make it a part of the land. Such facts, as the court said, indicate a design to incorporate into the freehold the thing placed on it. As between the mortgagor and mortgagee this would be held to be the legal intention, whatever the mortgagor might declare, unless the mortgagee assent thereto in some binding way other than by having notice of such declaration. But it is clear that an intention to make fixtures a part of the land is necessarily absent where the mortgagor gives to his lessee a right to attach an equipment for carrying on a trade on the mortgaged premises, with a right of removal thereof by the tenant. The necessary legal implication would be that the attachment was for a temporary, and not a permanent pur-

pose, and that the thing affixed would be separated and removed by the tenant from the premises at the termination of the demise. It would be implied that the use was for the tenant during the term and not for landlord, or those to claim under him.

In *Hill v. Sewald*, 53 *Pa. St.* 271, 91 *Am. Dec.* 209, Agnew J., said that the character of the physical connection of a chattel to real estate did not constitute the criterion of annexation, but the intention to annex, saying:

"The same want of intention to convert is imputed to a tenant who attaches to the land fixtures for the use of his business, the law presuming in favor of trade that he meant to remove them before the end of his term; and it is only on leaving without removal, the intention to make a gift of them to the landlord is imputed to him."

Inasmuch as the theory on which the case of *Watertown, etc., Co. v. Davis* was decided does not apply to the case at bar, this court is free to reach a conclusion without being controlled by the cited case as a precedent, though a court should not fritter away established rules of law by refining distinction. It is better to disregard or disapprove decisions of other courts than to unnecessarily and unwisely differentiate them, unless one finds a clear and controlling element of difference.

In the case of *Equitable Guarantee and Trust Co. v. Knowles*, 8 *Del. Ch.* 106, 67 *Atl.* 961, and also in the case of *Atkinson v. Patterson*, heard by Judge Spruance while at the bar, as referee, and reported in 8 *Del. Ch.* 539, as an appendix thereto, the question as to fixtures arose between a mortgagee of a mill and creditors of the mortgagor who had levied on articles in the mill as personal property subject to seizure and sale on a *fi. fa.* writ. Judge Spruance said that the mortgagee takes all the fixtures which would pass to the heir, and, as between the heir at law and the executor of the owner of the fee, the inheritance is favored. His opinion largely relates to applications of general principles as to the mode of attachment of articles of which the mill was composed, and has little of instruction for this case.

Chancellor Nicholson, in the other case, adopted for a like purpose the guides adopted by Judge Spruance and applied

them to the circumstances before him as to the particular mill. He quoted, however, with approval from the opinion of Judge Knowlton in *Hopewell Mills v. Taunton Savings Bank*, 150 *Mass.* 519, 521, 23 *N. E.* 327, 6 *L. R. A.* 249, 15 *Am. St. Rep.* 235, as to the intention of the owner in the annexation and method of ascertaining such intention. The character of the property, as real or personal, may be fixed by contract with the owner of the real estate when the article is put in position. In the absence of a contract the intent is to be found, not in the undisclosed purpose of the owner, but that implied and manifested by his act. In neither of these cases was the point under consideration here touched on in any such way as to show the mind of the court. In neither case does the court announce any principle which would deny the right of a mortgagor after making the mortgage to so lease the mortgaged premises as that the lessee could attach a building fitted and intended and appropriate for a trade purpose, and have a right as against the mortgagee to remove it, provided the value of the security, as it was when the mortgage was made was not impaired by the removal. Nor is either case an authority where there is such a lease. The giving of the right to remove did indicate unmistakably the intention of the parties thereto, both the mortgagor lessor and the lessee, that there should be no permanent annexation such as would constitute the building a part of the real estate.

There are no other cases in Delaware having an important bearing.

Viewing the particular questions raised in this case as without controlling precedent in this State, though there are illuminating decisions here, it will be found that in the courts elsewhere there is an irreconcilable conflict. On the one hand some courts hold that the mortgagor cannot grant to another a greater right than he himself has; and, therefore, as he cannot, as against the mortgagee, or any claiming under the mortgagee, remove things attached to the land, even for trade purposes, he cannot, as against the mortgagee, grant such right to his lessee; and the lessee can be restrained from removing chattels after an annexation thereof, even though

the original value of the security of the mortgage be not impaired. This rule does not seem to be equitable, or to be based on sound reason and good policy. It may seem logical, and is clearly defined and easily applied. It is also true that in this country the lessee takes his lease and makes his improvements with constructive notice of the mortgage and other record liens, and erects improvements for trade purposes at his peril. Courts of high standing take this view.

In Massachusetts the courts have consistently held that as against the mortgagee the mortgagor cannot, subsequent to the mortgage, give to a third person a right greater than the mortgagor had. *Clary v. Owen*, 15 *Gray* 522; *Lynde v. Rowe*, 12 *Allen* 100 (where the court said that a mortgagor cannot create a tenancy after making the mortgage which will be valid against the mortgagee); *Butler v. Page*, 48 *Mass.* (6 *Metc.*) 40, 39 *Am. Dec.* 757; *Meagher v. Hayes*, 152 *Mass.* 228, 25 N. E. 105, 23 *Am. St. Rep.* 819. Indeed the rule against the lessee has been called the Massachusetts rule. In the minds of some it may be deemed important that in Massachusetts the mortgagee takes the legal title and not a lien only. The courts of Maine follow those in Massachusetts. *Wight v. Gray*, 73 *Me.* 297; *Ekstrom v. Hall*, 90 *Me.* 186, 38 *Atl.* 106; *Young v. Chandler*, 102 *Me.* 251, 66 *Atl.* 539. But in none of these cases did the question arise as to a lessee.

On the other hand other courts have held that if the original value of the security for the payment of the mortgage debt is not affected by the removal of the fixture during the term of the lease, then the mortgagee has no just ground of complaint against such removal. This latter view meets the approval of this court as being based on the better reason and supported by the weight of authority. If the mortgagee is not injured by the removal during the term, his standing to prevent the removal is without merit. To allow such power is to unreasonably limit the use which a mortgagor may make of the mortgaged premises, and would tend to prevent the development and improvement of land for commercial and trade purposes. This is the view of the courts of New Jersey. In *Campbell v. Roddy*, 44 *N. J. Eq.* 244, 14

THE EQUITABLE G. & T. CO. vs. HUKILL, ET AL.    97

Opinion.

*Atl.* 279, 6 *Am. St. Rep.* 889 (1888), the Court of Errors and Appeals held that a mortgagee of chattels, afterwards annexed by the mortgagor to his land, did not lose his lien on the chattels after annexation, as against a mortgagee of the land made prior to the chattel mortgage, where the original security of the real estate mortgage was not diminished.    The principle on which the court based its ruling was thus stated by it:

"Any property belonging to the mortgagor, which he chooses to annex to the mortgaged premises, becomes realty.    But it is difficult to perceive any equitable ground upon which the property of another, which the mortgagor annexes to the mortgaged premises, should inure to the benefit of the prior mortgagee of the realty.    *  *  *    So long therefore as he is secured the full amount of the indemnity which he took, he has no ground for complaint."

This reason applies with even more force in the case at bar than in the case cited.    This case has been followed by later cases in New Jersey.    *Palmateer v. Robinson*, 60 *N. J. L.* 433, 38 *Atl.* 957, and *Oil City, etc., Works v. N. J., etc., Co.*, 81 *N. J. L.* 491, 79 *Atl.* 451 (1911), both cases in the Court of Errors and appeals, and *Falaenau v. Reliance Steel Foundry Co.*, (1908) 74 *N. J. Eq.* 325, 69 *Atl.* 1098.

In Indiana, in *Binkley v. Forkner*, 117 *Ind.* 176, 19 *N. E.* 753, 3 *L. R. A.* 33, a chattel mortgage on property annexed to land preserved the character of a chattel as against a mortgage on the real estate, made prior to the chattel mortgage and to the annexation of the chattel, if it could be removed without impairing the original value of the real estate.    Whether the security of the prior mortgage on the real estate would be impaired, or not, was deemed to be controlling.    The court said:

"Whether the chattel mortgage shall be postponed, notwithstanding the agreement between the owner of the land and the mortgagee, must depend upon the inquiry whether or not the preservation of the rights of the holder of the chattel mortgage will impair or diminish the security of the real estate mortgagee as it was when he took it.    If it will not, then it would be inequitable that the latter should defeat or destroy the security of the former.    If it will, then it was the folly or misfortune of the holder of the chattel mortgage that he permitted the property to be annexed to a freehold from which it cannot be removed without diminishing or impairing the existing mortgage thereon."

7

In *Belvin v. Raleigh Paper Co.*, 123 *N. C.* 138, 31 *S. E* 655 (1898), it was held that the lessee of mortgaged premises who put thereon improvements including a building and machinery for a paper mill, can hold them free of the mortgage, though the mortgagee did not join in the lease, or consent. This was based not only on the law of fixtures, but because the lease provided that the property should remain that of the lessee and be removable by him. The court based their conclusion on the principle that property annexed did not become the property of the mortgagor, who was also the lessor, and, therefore, the mortgagee could not acquire greater rights. By the agreement between the lessor and the lessee the things did not become a part of the land. One judge dissented. It did not appear whether the original value of the security for the mortgage was impaired or not.

In Alabama, in *Broadus v. Smith*, 121 *Ala.* 335, 26 *South.* 34, 77 *Am. St. Rep.* 61, the court said:

"The following propositions seem to be supported by the weight of authorities in well considered cases: (1) Where the owner of real estate contracts or agrees with a tenant that the tenant may erect or affix anything on the realty, and that the thing so affixed shall remain the property of the tenant, and be removed by him, such article never becomes a fixture, but remains personal property and the property of the tenant, and may be removed by him, just as any other article of personal property left by him on the land unattached to the realty. * * * (4) A prior mortgagee of the real estate acquires no interest in the chattel attached, subject, however, to the limitations that the mortgagor and tenant may not, by their acts, do anything to impair the mortgagee's security."

In New York the decisions seem to be conflicting. In *Sprague, etc., Bank v. Erie, etc., Co.*, 22 *App. Div.* 526, 48 *N. Y. Supp.* 65, and in *Bernheimer v. Adams*, 70 *App. Div.* 114, 75 *N. Y. Supp.* 93, affirmed without an opinion in 175 *N. Y.* 472, 67 *N. E.* 1080, the tenant of the mortgagor could remove, while in *McFadden v. Allen*, 134 *N. Y.* 489, 32 *N. E.* 21, 19 *L. R. A.* 446, the right of the prior mortgagee of the land prevailed against the person who had annexed fixtures by authority of the mortgagor.

Other cases give to a vendor of chattels annexed to the

land by the owner a right to the chattels, based on the contract of sale, as against the prior mortgagee, where the original security for the mortgage is not impaired.   These cases, even if they be treated as opposed to the case of *Watertown, etc., Co., v. Davis, supra,* yet .sustain the view taken herein. *Ellis v. Grover,* [1908] 1 *K. B.* 388, 13 *Ann. Cas.* 666, a decision of the Court of Appeals, based on *Gough v. Wood,* [1894] 1 *Q. B.* 713, which latter case was one where a tenant of a mortgagor was a conditional vendee of chattels annexed after the mortgage.   It should be observed, however, that there is more reason for so holding in England than here, because there the mortgages are not recorded and the lessee has not, therefore, the same opportunity for receiving notice of the mortgage.   See also, *Cochran v. Flint,* 57 *N. H.* 514; *Pioneer, etc., Co. v. Fuller,* 57 *Minn.* 60, 58 *N. W.* 831; *Paine v. McDowell,* 71 *Vt.* 28, 41 *Atl.* 1042.

In *Tiffany on Landlord and Tenant, p.* 1618, the matter is thus stated:

"In case the lease was made after the mortgage, the question whether the tenant annexing an article should be allowed to remove it as against the mortgagee might, it seems, depend to some extent on the legal character of a mortgage in that jurisdiction.  If the mortgage constitutes merely a lien, the mortgagor, retaining the legal title has the right to make a lease, which is valid as against the mortgagee, in so far as it does not affect his security, and a tenant holding under the lease would have the same right to annex and remove fixtures as if no mortgage had been given, provided only that their removal does not render the premises less valuable as a security than they were at the date of the mortgage.  But this view, that if the mortgage creates merely a lien the mortgagor's tenant has the right of removal, is not in accord with a number of decisions, rendered in states where such is the effect of a mortgage, that a mortgagor cannot remove articles annexed by himself since, it would seem, the mortgagor's tenant can have no greater rights as to removal than the mortgagor."

This view, that the legal character of the interest of the mortgagee in the mortgaged premises has a bearing, does not seem to be sound.   It would seem to be unimportant whether the interest of the mortgagee prior to default of the mortgagor, be that of a lien holder only, or whether the

mortgage operates as a conveyance of the legal estate to the mortgagee. In the latter case it is a qualified interest and in both cases the mortgagee is treated in equity and at law as the real owner.

It is settled in Delaware that the interest of the mortgagee in the mortgaged premises is only that of a lien holder and that he does not take the legal title. *Fox v. Wharton*, 5 *Del. Ch.* 200.

Questions similar to those in this case have arisen where the chattel is annexed by an owner who has previously given a chattel mortgage on the property annexed, and also where a vendee of land, put in possession under a contract of sale, makes improvements, and in such cases the courts differ as to the rights of a prior mortgagee relating to the removal of such fixtures after the annexation thereof. But it seems that in both cases the intention with which the annexations were made might reasonably be considered controlling.

No. opinion is here expressed as to the effect upon the rights of a lessee in case of a foreclosure of the mortgage and a sale of the mortgaged premises during the term, for in the case under consideration the term is pending and the mortgage has not been foreclosed.

There is, then, in this case a legal intention of both lessor and lessee not to make the trade fixtures, or improvements, a part of the land, and as between these persons the buildings remained chattels, removable during the term; and the complainant, the mortgagee, has no equitable ground of complaint, because it is not alleged, or shown, that the value of the security which he had when the mortgage was made, and on which he relied, is impaired by the annexation and removal of the buildings by the tenant during the term and prior to a foreclosure of the mortgage. The bill should therefore, be dismissed.

Let a decree be entered accordingly.