**WILMINGTON SUBURBAN WATER CORPORATION, Appellant,**

v.

**BOARD OF ASSESSMENT FOR NEW CASTLE COUNTY et al., Appellees.**

**NEW CASTLE COUNTY WATER COMPANY et al., Appellants,**

v.

**NEW CASTLE COUNTY BOARD OF ASSESSMENT REVIEW et al., Appellees.**

Superior Court of Delaware,
New Castle.

April 26, 1972.

294

H. James Conaway, Jr., Edward B. Maxwell, 2nd, Young, Conaway, Stargatt & Taylor, Wilmington, for appellants.

Robert E. Daley, Wilmington, for appellees.

## OPINION

O'HARA, Judge.

This action is an appeal to the Superior Court from a decision of the New Castle County Board of Assessment ("Board") holding certain trade equipment taxable as real property. Appellants are a group of companies * that furnish water for commercial and residential uses within New Castle County. In the conduct of their operations appellants maintain various pipes, mains and storage tanks used in connection with a water distribution system extending throughout the County. The appellant water companies contend in this proceeding that the aforementioned equipment, presently assessed and taxed against the companies by the County, is personal property and, therefore, not properly subject to taxation under the terms of 9 Del.C. § 8101. That statute in express language provides:

"All real property situated in this State shall be liable to taxation and assessment for public purposes by the county in which the property is located, except as otherwise provided in this chapter."

In the alternative, the appellants argue that should it be determined adversely to the water companies that the various equipment may be deemed real property fixtures under the common law, then it is nontheless certain that statutory interpretation of 9 Del.C. § 8102 demonstrates that it was considered otherwise by the legislature. That section relied upon by appellants reads as follows:

"No county or other political subdivision of the State shall levy, assess or collect any tax upon personal property, whether tangible or intangible.

This section shall not be construed as having any effect upon any lands held under lease or demise or upon any buildings, improvements, equipment, or structures of any nature made or erected upon lands so held under lease or demise, or

upon any poles or wires maintained thereon other than for enclosing lands."

Appellants' position apparently is that the statute's omission of the subject items among those enumerated exceptions to the broad personal property exemption by implication places appellants' pipes and tanks within the principal clause of § 8102 exempting personalty. Appellants' argument begins with the premise that the qualifications of § 8102 are all inclusive. In this connection, appellants reason that the reference to sui generis items (i.e. the poles and wires) in the non-exempt provision to § 8102 warrants the inference that the subject tanks and pipes were contemplated by the legislature and deliberately omitted therefrom. Accordingly, appellants conclude from this exclusion that the general exemption of § 8102 is applicable.

A complete description of the subject property may be fairly summarized as follows. The water companies own distributional equipment of basically two types, water storage facilities existing above ground and pipelines buried beneath the soil at varying depths throughout the County. Some of the land occupied by the pipelines is owned by the water companies themselves. However, with respect to the greater portion of their pipelines, the water companies have been required to negotiate with both public authorities and private landowners regarding their installation. Pursuant to these negotiations a number of distinct arrangements have been agreed upon whereby the water companies have acquired certain licenses or privileges to occupy property for the conduct of their operations.

The nature of each such relationship and the attendant reciprocal rights and duties arising thereunder allegedly has a significant bearing on the water companies' argument and is the subject of a lengthy stipulation of fact. Therefore, this part of the record will be set forth in some detail. Portions of the water companies pipelines

---

* New Castle County Water Company, Wilmington Suburban Water Corporation, Arden Water Company and Delaware Water Corporation.

lie under state owned land subject to State Highway Department interim permits and franchises of thirty years duration for which the companies pay an annual fee. Under the terms of the franchise agreements, should the water companies fail to provide service to persons along the highways, the franchise shall be revoked and the water companies required to remove their equipment. In the event of non-use of any of the pipes, main or conduits the franchise provides that the permit may be terminated and the companies' equipment may be removed at their own expense.

The water companies have laid pipes, mains and conduits within the limits of railroad rights-of-way belonging to the Pennsylvania Railroad Company pursuant to occupancy agreements referring to the companies as licensees and providing for a right of removal in the water companies. Certain of the water companies have located their pipelines on private land and have obtained rights in the nature of easements with a right of removal at the option of the companies. The companies maintain that they have frequently exercised their prerogative to remove their pipelines as part of the continuing process of repair and replacement.

The water companies also own large storage facilities on property owned by themselves or held under lease. These storage facilities consist of both ground and elevated tanks. The elevated tanks are steel and stand or rest upon metal legs which are bolted to foundations of concrete. The ground storage tanks apparently are not fastened or bolted in any way to the real property, but rest upon the ground by the force of gravity supported in position by a concrete ring or a stone bern type of foundation. These structures, though large, are capable of being removed and, in fact, at least one was so removed from the water company's property in 1968 after a useful life of approximately 30 years. The one tank remaining and situated on leased property, is guaranteed long term occupancy if desired by the terms of a 99 year leasehold interest.

The term "real property" is not defined in 9 Del.C. § 8101. When a revenue statute, like any other statute, does not define its terms, it is proper to refer to the common law. 3 Sutherland, Statutory Construction, 5301, p. 5. At common law the concept of real property included fixtures, articles which by reason of their annexation to land were regarded as part of the freehold. Warrington v. Hignutt, 3 Terry 274, 31 A.2d 480 (Del.Super.1943). A chattel is sufficiently annexed to the realty, and therefore taxable as a fixture under 9 Del.C. § 8101, where all the surrounding circumstances indicate an *intent* on the part of the annexor to permanently accede the chattel to the land. *Wilmington Housing Authority v. Parcel of Land*, 219 A.2d 148 (Del.Supr.1966); Della Corporation v. Diamond, 210 A.2d 847 (Del. Supr.1965). In Wilmington Housing Authority v. Parcel of Land, supra, the Supreme Court indicated the factors that should be considered in ascertaining the intention of the annexor. The Court therein stated:

> "In determining whether or not a chattel has been sufficiently annexed to the realty to become a fixture, the controlling test is the intention of the party making the annexation as disclosed by the surrounding circumstances. To determine this intention, various factors should be considered. Thus, the nature of the chattel, the mode of its annexation, the purpose or use for which the annexation has been made, and the relationship of the annexor to the property, are all to be considered and weighed in determining the question of intention."

The parties have stipulated to the pertinency of the above principles of law, but differ as to its application to the record facts.

The water companies assert that the nature of their chattels and the mode of annexation suggest that they were installed for a temporary purpose and are properly characterized as non-taxable personalty. It is pointed out that the various business chattels placed on and through the land are not adapted to the land, do not enhance the value thereof, and have value independently of any use in connection with the land. Thus, the companies maintain that a design or intent to incorporate the chattels into the freehold may not be inferred. Equitable Guarantee & Trust Co. v. Knowles, 8 Del.Ch. 106, 67 A. 961 (1896). Furthermore, the manner in which the equipment is affixed to the land allows for its removal. In this connection, it is emphasized that both the inherent right to remove the chattels (from company owned land) and the reserved right to remove pursuant to agreement have, in fact, been exercised with respect to particular links in the water system in a continuing process of repair and replacement. Finally, the water companies argue that the law necessarily implies that a licensee who attaches chattels used in a trade or business upon the land of another with the reservation of a right to remove upon the termination of the privilege intended that the attachment was for a temporary purpose. Equitable Guarantee & Trust Co. v. Hukill, 10 Del.Ch. 88, 85 A. 60 (1912). This follows from the natural presumption that a gift to the owner of property was not intended.

The County, on the other hand, contends that while the subject chattels are removable it is only with great difficulty. Moreover, it is argued that the physical removability of the chattels has no discernible significance in the present case where from the purpose or use for which the annexation was made it may be inferred that the chattels were intended to remain upon the land indefinitely or for a substantial period of time. Paris Mountain Water Co. v. Woodside, 133 S.C. 383, 131 S.E. 37 (1925). In this connection, the County suggests that it would be unrealistic to conclude that the water companies ever contemplated the removal of the subject chattels prior to the termination of their useful life where such removal would effect the water supply of New Castle County.

It is the opinion of the Court that the various pipelines, conduits and storage tanks used in the distribution of water constitute real estate for the purpose of taxation under the common law. Moreover, the Court does not find in paragraph two of 9 Del.C. § 8102, an intent on the part of the legislature to modify the common law as to the chattels referred to above. In concluding that the subject chattels constitute fixtures at the common law, the Court is persuaded in this instance that controlling significance must be afforded to the purpose or use for which the annexation was made as indicative of an intention on the part of the water companies to accede the chattels to the land permanently. Thus, the Court agrees that given the nature of the service performed and the capital outlay expended it is inconceivable that the water companies contemplated removal of the chattels prior to the expiration of their useful life. Moreover, it is the opinion of this Court that the result reached in this decision is supported by the weight of authority. 57 A.L. R. 869.

It appears to the Court that appellants' error is their unfounded reliance upon the *Hukill* decision. In *Hukill*, a tenant by authority of a written agreement with his lessor providing for an expressed right of removal attached improvements to the leased premises for use in his trade. The Court considered the question of whether the buildings were fixtures and thereby subject to the lien of the mortgage on the land. The Court relying substantially upon the natural presumption that the tenant intended such annexation for his own profit accordingly held that the building remained the personal property of the lessee, and refused the mortgagee's petition to en-

join the tenant's removal of the building at the end of the lease. The water companies assert on the basis of *Hukill* that the expressed reservation of a right of removal in the various agreements set forth raise the necessary legal implication that attachment for a temporary purpose was intended.

■ This Court is not persuaded that the narrow holding of *Hukill* supports by analogy the generalization suggested by the water companies in the case at bar. The rule in *Hukill* was for the limited purpose of protecting a tenant in the ownership of certain kinds of property, and has no application between other parties in different relationships. The effect, in the present case, of giving the reservation of a right of removal the force of an irrebuttable presumption of a temporary purpose would render private contractual relations as controlling for purposes of taxation. Such a result is not in conformity with the law. 84 C.J.S. Taxation § 66; Appeal of Mesta Mach. Co., 347 Pa. 191, 32 A.2d 236 (1943).

Furthermore, the instant case is in other respects factually distinguishable from *Hukill*. The tenant in *Hukill* bargained for the right to remove the improvements from the premises as a means of preserving his property rights. Here the right to remove the chattels from the land is apparently ancillary to a legal obligation to repair and replace links in the water system. Accordingly it is clear here that the appellants intended to affix their chattels permanently to the land. Having satisfied the criteria set forth in Delaware with respect to fixtures, appellants' equipment is taxable under 9 Del.C. § 8101.

■ Appellants, however, additionally rely upon a purported statutory exemption contained in 9 Del.C. § 8102. In support of this position, appellants have found it necessary to engage the Court in an attenuated construction of the aforementioned statute. The Court is, however, of the opinion that appellants' water mains

and tanks are not exempt by the literal terms of § 8102. Appellants' tanks and mains constitute trade "equipment" and are, therefore, encompassed in the enumerated exceptions to § 8102.

For the reasons herein set forth, the Court concludes that the decision of the Board below should be affirmed.

It is so ordered.