## In re WILLIAMSBURG KNITTING MILL.

### (District Court, E. D. Virginia.   June 30, 1911.)

1. MORTGAGES (§ 154*)—CONDITIONAL SALES—NOTICE.

Actual or constructive notice to a mortgagee of the rights of a conditional seller of property placed on the mortgaged premises is as effective to charge the mortgagee with notice of the reservation of title as a record of the instrument containing the same.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 344–353; Dec. Dig. § 154.*]

2. MORTGAGES (§ 13*)—AFTER-ACQUIRED PROPERTY—VALIDITY.

A clause in the mortgage on the property of a knitting mill company that the mortgage should cover after-acquired property is valid.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 15; Dec. Dig. § 13.*]

3. FIXTURES (§ 27*)—SPRINKLER SYSTEM—PROVISIONS OF CONTRACT.

Where a sprinkler system installed in a knitting mill consisted of a 50,000-gallon tank tower erected on a concrete foundation, and pipes running underground into the plant, bolted to the beams of the buildings, it was a fixture, notwithstanding a provision in the conditional contract for the installation and sale thereof that it should retain its character as personal property, and that the title should remain in the seller until paid for.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 5–54; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 3, pp. 2831–2846, vol. 8, p. 7664.]

4. MORTGAGES (§ 151*)—LIEN — PRIORITY — AFTER-ACQUIRED PROPERTY — FIXTURES.

Where a mortgage on a knitting mill plant included engines, boilers, fixtures, machinery, and all other equipment in or on the premises, or which were thereafter acquired and placed thereon, the mortgage was a lien on an after-acquired sprinkler system, installed in the plant, which was a fixture, prior to the rights of a conditional seller of the system under an unrecorded contract of conditional sale, of which the mortgagee had neither actual nor constructive notice.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 307–336; Dec. Dig. § 151.*]

5. BANKRUPTCY (§ 140*)—RIGHTS OF TRUSTEE—UNRECORDED CONDITIONAL SALE.

Where, under the state law, a conditional sale contract was invalid as against lien creditors unless recorded, an unrecorded conditional sale contract was invalid as against the purchasers of the trustee in bankruptcy under Bankr. Act July 1. 1898, c. 541. § 47, subd. a, cl. 2, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), as amended by Act June 25, 1910, c. 412. § 8, 36 Stat. 840, providing that trustees in bankruptcy as to all property coming into the custody of the bankruptcy courts shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198–225; Dec. Dig. § 140.*]

In Bankruptcy.   In the matter of the Williamsburg Knitting Mill. Proceedings to review referee's order holding invalid a vendor's lien

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

under an unrecorded conditional sale contract as a lien against the bankrupt's estate. Affirmed.

This proceeding is now before the court upon the application of George H. Holt & Co. to review the action of Referee John B. Locke, holding the claim of the petitioners, as vendors of a certain sprinkler system furnished to the bankrupt company, not to constitute a lien as against the said sprinkler in the hands of the bankrupt's trustee, because of lack of recordation of the contract of sale prior to the bankruptcy, and also because the sprinkler system is subject to lien by a deed of trust upon the property of the bankrupt, in which the same was installed, to Henley, trustee, to secure a debt to the Peninsula Bank. of Williamsburg, under the after-acquired property clause contained in said mortgage.

The facts are briefly that under contract dated August 25, 1909, but not signed by the bankrupt until the 14th of October, 1909, George H. Holt & Co. undertook to install in the bankrupt's mill at Williamsburg a complete automatic sprinkler system, supply pipes, pressure alarm and other valves, a 50,000-gallon tank, and a steel tower for the tank. Holt & Co. were to furnish the labor and materials incident to the work, except as otherwise provided in the specifications, and the bankrupt company was required to "do all necessary trenching, carpenter work, and mason work, and cartage and handling of material in Williamsburg, Va., also to furnish foundations for the 50,000-gallon tank." The sprinkler system was duly installed, the bankrupt erected the concrete foundation on which the 50,000-gallon tank tower was erected, and to which it was securely bolted, pipes were laid underground running into the plant (a large brick building) bolted to the beams in the building, and the sprinkler was ready for service in March, 1910. In the contract the following clause reserving title until the full purchase price was paid appears: "It is agreed that the said sprinkler system and equipment shall become, be and remain the property of the party of the first part until the title thereto is acquired by the party of the second part as hereinbefore provided, and that said system and equipment shall, during the period of the agreement herein provided, be, and be considered as personal property and not a part of the realty." Although this contract was duly executed, no memorandum thereof was ever recorded in the clerk's office of the circuit court of the county of James City and city of Williamsburg, as required by section 2462 of the Code of Virginia, which is as follows: "Every sale or contract for the sale of goods and chattels wherein the title thereto or a lien thereon is reserved until the same be paid for in whole or in part, or the transfer of title is made to depend on any condition, and possession be delivered to the vendee, shall, in respect to such reservation and condition, be void as to creditors of and purchasers for value without notice from such vendee until such sale or contract be in writing, signed by both the vendor and vendee, in which the said reservation or condition is expressed, and until and except from the time that a memorandum of said writing, setting forth the date thereof, the amount due theron, when and how payable, and a brief description of said goods or chattels, be docketed in the clerk's office of the circuit or corporation court of the county or corporation in which said goods or chattels may be."

The facts as to the mortgage to Henley, trustee, in favor of the Peninsula Bank are substantially that the same was executed on the 23d day of November, 1909, to secure a loan of $12,000, and duly recorded in the clerk's office of the circuit court of the county of James City and city of Williamsburg. This conveyance was made subsequent to the execution of the contract with Holt & Co., but prior to the completion of the sprinkler system equipment, which was not until March, 1910. The reservation of title in Holt & Co. was not recorded, as aforesaid, and the deed to Henley, trustee, after conveying the lands, buildings, and improvements thereon of said Knitting Mills, contained an after-acquired clause, as follows: "Together with the engines, boilers, fixtures, machinery, and all other appliances and equipments constituting or in any wise whatsoever connected with the Williamsburg Knitting Mill Company plant, in and upon the premises hereby

conveyed, or which may be acquired and placed upon the said premises during the continuance of this trust; it being the true intent and purpose of this deed to convey to the said trustee the entire plant of the Williamsburg Knitting Mill Company for the purposes hereinafter set forth."

O. D. Batchelor and Henley & Henley, for trustees in bankruptcy.

R. T. Armistead and S. O. Bland, for petitioners George H. Holt & Co.

WADDILL, District Judge (after stating the facts as above). Two questions are presented on the record for consideration by the court: (A) Whether the after-acquired clause in the mortgage of the 23d of November, 1909, to Henley, trustee, constituted a lien upon the sprinkler system, made a part of the premises, after the execution and recordation of the trust deed. (B) Whether the referee correctly ruled that under the bankruptcy act as amended on the 25th of June, 1910 (Act June 25, 1910, c. 412, 36 Stat. 838), it was necessary for the vendors, Holt & Co., to record their contract, in order to secure a lien as against the bankrupt's estate, in the hands of its trustee. These two positions will be taken up in the order mentioned.

First. Considering the validity of the lien in favor of the Peninsula Bank by reason of the after-acquired clause in the mortgage, a preliminary point was raised, namely, that the bank took the deed with actual notice of the existence of the contract in favor of Holt & Co., and hence should not be entitled to a lien. The determination of this question depended largely upon the facts of the case. The referee saw and heard the witnesses testify, and reported in favor of the bank; that is to say, that it was not so circumstanced as to be charged with notice of the right of the vendors to the lien asserted by them.

[1] Actual or constructive notice to the bank, or its trustee in the deed of trust, of the rights of Holt & Co., would have been as effective from a legal standpoint as if the contract containing the reservation of title had been duly admitted to record. But the referee found that neither the bank nor the trustee had actual or constructive notice, and with this finding the court concurs.

[2] Under the after-acquired clause in the mortgage, as in this case, any property acquired by the mortgagor subsequent to the date of the execution and delivery of the mortgage, which was within the general description of property contained therein, became as fully subject to the lien of the mortgage, in equity, as if such property had been owned by the mortgagor on the date of the execution and delivery of the mortgage. The authorities to sustain this position are clear, and within comparatively recent date the entire subject has been reviewed by the Circuit Court of Appeals of this circuit in two cases, namely, Union Trust Co. v. Southern Sawmills Co., 166 Fed. 193, 197, 199, 200, 92 C. C. A. 101, and Tippett & Wood v. Barham, 180 Fed. 76, 80, 103 C. C. A. 430, to which cases, with the authorities cited in each, special reference is made as containing a full review of the authorities governing and controlling this subject.

[3, 4] In order for the after-acquired property clause in the mortgage in question to constitute a valid lien, of course, the property in

controversy must come fairly within the terms of such after-acquired property clause; and such after-acquired lien must be subordinate to any pre-existing valid lien upon the property at the time it was placed upon the premises. This case, however, is comparatively free from difficulties in this respect, as it is clear that the sprinkler system in question, when installed, became a fixture and such part of the bankrupt's estate as to form and become a portion thereof, notwithstanding the provision in the contract of sale that it should remain the property of the vendors, and retain its character of personalty; and was hence subject to the after-acquired property clause in a deed theretofore executed, fairly embracing the same, and whatever may have been the rights of the vendors in the property thus put upon, and which forms part of the real estate, or the correct method of legally securing and prosecuting such rights, had the same been timely and appropriately taken under the law of the state of Virginia, it is immaterial to determine here, for the reason that the vendors in this instance recorded no lien, and took no steps whatever to save their rights, if any they had, against those of the existing mortgagee, and hence, as between the two claimants of liens, the mortgage takes precedence.

[5] Second. In passing upon the correctness of the referee's ruling that it was essential under the amended bankruptcy act of the 25th of June, 1910, for the petitioners Holt & Co., the vendors of the sprinkler system in question, to record their contract, in order to make effective their lien as against the bankrupt's estate in the hands of its trustee, it becomes necessary to determine the effect of the amendment and just what title and estate the bankrupt's trustee in the light of the bankrupt law as amended takes; or, to state the question differently, to ascertain just what effect the bankruptcy proceeding has as respects those who hold liens or incumbrances upon, or have an adverse interest to that of the bankrupt in such estate. This subject cannot be said to have been free from doubt under either the present act or that of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517); that is, the authorities have not always been harmonious, though it may be fairly stated that under both acts, the consensus of opinion, and certainly the better doctrine is, that, except in cases of attachment sued out or other lien or incumbrance had and secured within the prescribed time preceding the commencement of proceedings in bankruptcy, and except in cases where the procurement of such lien or disposition of property by the bankrupt is declared to be fraudulent and void, the bankrupt's trustee takes the property in the same condition that the bankrupt himself held it, and subject to all equities impressed upon the property in the hands of the bankrupt, and subject, also, to all such valid liens or incumbrances, whether created by operation of law or by act of the bankrupt, which existed against the property in the hands of the bankrupt. Cook v. Tullis, 18 Wall. 332, 21 L. Ed. 933; Yeatman v. Savings Institution, 95 U. S. 764, 24 L. Ed. 589; Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816; Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075; Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; Thompson v. Fairbanks, 196 U. S. 516, 526, 25 Sup. Ct. 306, 49 L. Ed. 577.

The cases cited (and others might be given) firmly maintain the doctrine that a trustee in bankruptcy gets no better title than that which the bankrupt had at the initiation of the bankruptcy proceedings; that he is not a purchaser for value within the meaning of the recordation acts; and that, as the vendor's title under the conditional sales agreement as between himself and the bankrupt is good, it is also good against the bankrupt's estate, and the same may be said of liens generally upon the bankrupt's estate, or claims to such estate, good as between such claimants or the holders of such liens and the bankrupt. In such cases the liens upon or claims to property belonging to the bankrupt are unaffected by the bankruptcy.

The contrary doctrine is that it is the policy of the bankruptcy act to clothe the trustee with title as against secret claims, liens, and equities, and compels every one to comply with the state statutes respecting recordation; and in consequence of failure to do so to lose their claim upon, or right to, lien or equity. Under the bankruptcy law of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), the case of Bank v. Sherman, 101 U. S. 403, 405, 25 L. Ed. 866, gives strong color to this view of the law. In that case the court said:

"The filing of the petition was a caveat to all the world. It was in effect an attachment and injunction. Thereafter all the property rights of the debtor were ipso facto in abeyance until the final adjudication. If that were in his favor, they revived and were again in full force. If it were against him, they were extinguished as to him and vested in the assignee for the purposes of the trust with which he was charged. The bankrupt became, as it were, for many purposes civiliter mortuus. Those who dealt with his property in the interval between the filing of the petition and the final adjudication did so at their peril. They could limit neither the power of the court, nor the effect of the final exercise of its jurisdiction. With the intermediate steps they had nothing to do. The time of the filing of the petition and the final result alone concerned them."

Under the present bankruptcy act, the case of Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 269, 46 L. Ed. 405, likewise apparently maintains the same view; the Chief Justice, at page 14, saying:

"It is true of the present law, as it was of that of 1867, that the filing of a petition is a caveat to all the world, and, in effect, an attachment and injunction (Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866) and on adjudication title to the bankrupt's property became vested in the trustee (sections 70, 21e), with actual or constructive possession, and placed in the custody of the bankruptcy court."

At first blush, the last two cases would appear to be in direct conflict with those next hereinbefore recited; but a careful analysis of the same will tend to relieve this apparent difference. The first-named cases grew out of transactions incident to the assertion of adverse claims by those claiming title to the property against the bankrupt or his trustee, or liens upon the same in the hands of the bankrupt's trustee; whereas the two last-named cases apply to controversies arising out of the attempted disposition by the bankrupt of portions of his estate after the institution of the bankruptcy proceedings. The Court of Appeals of this circuit applied the doctrine of the two last-named cases to the enforcement of the vendor's lien. Chesapeake

Shoe Co. v. Seldner, Trustee, 122 Fed. 593, 58 C. C. A. 261, as did, also, the Court of Appeals of the Sixth Circuit in Dolle v. Cassell, 135 Fed. 52, 67 C. C. A. 526, this last case being reported in the Supreme Court under the title of York Manufacturing Co. v. Cassell, 201 U. S. 344, 352, 26 Sup. Ct. 481, 50 L. Ed. 782, and in it the Supreme Court reversed the holding of the lower court on the very question involved herein, and adhered to the rulings in the first-named cases. This decision is believed to be the last expression of opinion by the Supreme Court, and would be conclusive in this state, as the Ohio statute and the Virginia statute are substantially alike regarding the matters under consideration; that is, as to when it is necessary to make recordation of the vendor's lien to be effective as against the bankrupt or his trustee. The Ohio statute (section 7880, Rev. St. 1890) provides that:

"* * * Such condition, in regard to the title so remaining until such payment, shall be void as to all subsequent purchasers and mortgagees in good faith, and creditors, unless such conditions shall be evidenced by writing, signed by the purchaser, lessor, renter, hirer or receiver of the same, * * * until the same is deposited with the clerk of the township where the person signing the instrument resides," etc.

The Virginia statute (Code 1904, § 2462) enacts that:

"Every sale or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon, is reserved until the same is paid for in whole or in part, or the transfer of title is made to depend on any condition and possession be delivered to the vendee, shall in respect to such reservation and condition, be void as to creditors of and purchasers for value without notice from such vendee until such sale or contract be in writing, signed by both the vendor and vendee in which said reservation or condition is expressed, and until and except from the time that a memorandum of said writing, setting forth the date thereof, the amount due thereon, when and how payable, and a brief description of said goods or chattels, be docketed in the clerk's office," etc.

In neither of these acts, it will be observed, is it necessary to record the lien as between the vendor and vendee, but only against subsequent purchasers and mortgagees in good faith, and creditors under the Ohio act, and under the Virginia act "as to creditors of and purchasers for value without notice from such vendee." The York Case made it clear that only as to those specifically named in the act—that is, subsequent purchasers and mortgagees in good faith and creditors— was recordation necessary; the court saying:

"We come, then, to the question whether the adjudication in bankruptcy was equivalent to a judgment, attachment, or other specific lien upon the machinery. The Circuit Court of Appeals has held herein that the seizure by the court of bankruptcy operated as an attachment and an injunction for the benefit of all persons having interests in the bankrupt's estate. We are of opinion that it did not operate as a lien upon the machinery as against the York Manufacturing Company, the vendor thereof. Under the provisions of the bankrupt act, the trustee in bankruptcy is vested with no better right or title to the bankrupt's property than belonged to the bankrupt at the time when the trustee's title accrued. At that time the right, as between the bankrupt and the York Manufacturing Company, was in the latter company to take the machinery on account of default in the payment therefor. The trustee under such circumstances stands simply

in the shoes of the bankrupt and as between them he has no greater right than the bankrupt."

And the court cites from Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, supra, as follows:

"Under the present bankrupt act, the trustee takes the property of the bankrupt in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt."

In this connection it may be further remarked that the creditors referred to in the Virginia statute mean judgment or lien creditors, and not general creditors, or persons holding unsecured claims. McCandlish v. Keen, 13 Grat. (Va.) 615, 638; Dulaney v. Willis, 95 Va. 606, 29 S. E. 324, 64 Am. St. Rep. 815; York Manufacturing Co. v. Cassell, 201 U. S. 344, 351, 26 Sup. Ct. 481, 50 L. Ed. 782; Jones on Chattel Mortgages (4th Ed.) § 245. The amended act of June 25, 1910, was passed as a result of the decision in the York Manufacturing Co. Case, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, supra, and with a view of meeting the same, as will be presently shown. The section as amended is as follows:

"Sec. 8. That section forty seven, clause two, of subdivision a, of said act as so amended be, and the same hereby is, amended so as to read as follows:

"Collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estate as expeditiously as is compatible with the best interests of the parties in interest; *and such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied.*" (Amendment italicised.)

The language used in this amendment is clear and comprehensive, and as viewed by the court unequivocally gives to the bankruptcy proceeding the effect of a lien, as is contemplated by the York Case, supra, and the same will suffice to give to those claiming rights by reason of the bankruptcy court proceedings, precedence over an unrecorded vendor's lien under the Virginia statute. The amendment does, in fact, give to the bankruptcy proceedings the force of a "caveat to all the world," and in effect "an attachment and injunction," and the same applies to cases as well of the attempted disposition of property after bankruptcy, as to those asserting title to or lien upon the bankrupt's estate arising out of transactions antedating the bankruptcy. The effect of this change is unquestionably radical and far reaching, as regards the consequence of the institution of bankruptcy proceedings, but it is what Congress had the right to do, and carries out what in the judgment of many should be the effect of such proceeding. It makes the date of the institution of the bankruptcy proceeding, the time as of which rights to, and claims against the estate, should be reckoned with and adjusted, and from and after which period no one creditor or claimant can secure or receive preference

or advantage over another. The opinion of Mr. Justice Swayne in Bank v. Sherman, 101 U. S. 403, 406, 25 L. Ed. 866, supra, is particularly appropriate in this respect, the learned justice saying:

"The statute is clear and imperative. Its constitutional validity is not questioned. It contains no qualifications. We cannot interpolate what is claimed. Such a function is beyond the sphere of our power and duty. It is our business to execute the law as we find it, and not to make or modify it. In the disposition of property among creditors, equality is equity. It was the genius and purpose of the statute to secure this result as far as possible from the moment its aid was invoked, whether by debtor or creditor."

This view of the effect of this amendment is taken by Remington, an author of recognized authority on bankruptcy laws. In the recent edition of his work (volume 3, p. 331), the author says:

"By the amendment of 1910 to the bankruptcy act, section 47a (2), 'this rejected doctrine' that bankruptcy operates as an 'equitable levy' as to property in the custody of the bankruptcy court, has become the accepted doctrine."

Moreover, this author shows that Congress by the amendment in question purposely sought to modify the decision of York Manufacturing Co., v. Cassell, supra. At page 331 of the same volume (3) the report of the Senate judiciary committee on the amendment of the act is set out in full, stating in terms that its object and purpose was to meet the decision in the York Case, and to adopt in lieu thereof the views herein taken. Collier on Bankruptcy (8th Ed.) pp. 541, 542, refers to this amendment approvingly, and in effect takes the same view of the act that Remington does, though he calls attention to the fact that more logically the amendment should have been to section 70 of the bankrupt act, instead of section 47.

The only decision since the amended act to which the court's attention has been called is that of In re Lausman (D. C.) 183 Fed. 647, a decision of Judge Evans, of the Western District of Kentucky. This opinion is entitled to much weight by reason of the recognized ability and experience of the judge rendering the same. The case involved, however, a small amount, and it is fair to assume was not presented as fully as has been the case here, and was decided before the publication of the recent editions of Remington and Collier, the former of which called special attention to the reason for the Senate's action, as above indicated.

It is earnestly insisted that the amended act, if given the interpretation herein accorded it, is unconstitutional as depriving the petitioners of their property without due process of law. With this view the court cannot agree, as it is in no respect a violation of one's constitutional rights to require him to conform to the recordation acts of the state in which he has property. The vendor's rights in this case would, under the plain terms of the Virginia statute, have been protected against the bankrupt's execution or other lien creditors, and remained unaffected by bankruptcy proceedings, had they seasonably complied with the statute requiring recordation of their reservation of title. The further suggestion is made that the amended act should not be given the effect contended for because of the particular section

amended; in other words, it is maintained that the amendment should have been to section 70, subsec. 5, instead of to clause 2 of section 47, subd. "a" of the act. Unquestionably the amendment should more properly have been to the seventieth section of that act, as claimed, which deals with the property as to which the trustee acquires title, instead of section 47, which relates more particularly to the duties of the trustee, but at the same time it does not follow that it should have been necessarily so made, and that Congress could not have expressed its desires and wishes as well under the section prescribing the duties of the trustee as that relating to title to property, and this is just what it apparently did, and in terms so clear, comprehensive, and specific that there can be no serious doubt as to its meaning, intention, and purpose, and the court feels bound by the plain import of the language used.

The action of the referee sought to be reviewed will be approved and affirmed.