In the Matter of the Receivership of Frederica Water, Light and Power Company.

*Kent, Jan.* 25, 1915.

A "receiver" of an insolvent corporation is an officer of the court, and takes only what the corporation had.

Under a conditional sale contract to sell and erect a water tower on land of a corporation supplying water, the tower resting on and bolted to a cement foundation is a fixture and a part of the realty.

Where there is a contract to sell and erect on land of a corporation supplying water, a water tower as a part of its plant, which contract stipulates that the title shall remain in the seller until payment of the price, with right to remove on default, the rights of the seller are superior to a mortgage executed by the corporation subsequent to the contract, but before the building of the structure, and covering not only property in existence at the time of the mortgage, but also after-acquired property, and the seller may as against the mortgagee remove the tower on default in payment of the price.

A clause in a mortgage given by a public service corporation that it shall include after-acquired property is valid.

Holders of corporate bonds secured by a mortgage covering after-acquired property take after-acquired property subject to any liens or equities with which it is impressed when it comes into the hands of the corporation.

Where chattels, intended to become fixtures, are sold with a reservation of title in the seller until payment of the price, the seller does not lose his right by annexation as against the mortgagee whose lien on the land existed at the time of the annexation, though not when the contract of sale was made, though the mortgage covered subsequently acquired property.

A conditional sale contract, giving the seller on default in payment of the price the right to remove property annexed to land, limits the right of the seller to removal, but on the insolvency of the buyer the property may with the other property be sold after an agreement fixing the value of the property, the amount of which on a sale must be paid to the seller.

Exceptions were taken by the receiver to the claim filed against the receivership estate by Tippett and Wood, by

which is sought the right to remove from the property of the Frederica Water, Light and Power Comapny a water tank, erected thereon under an agreement or contract of conditional sale.

The facts are sufficiently stated in the opinion of the Chancellor.

*Henry Ridgely*, for the receiver.
*James H. Hughes*, for the claimant.

THE CHANCELLOR. In the course of administering the affairs of the insolvent company, exceptions were taken by the receiver to the claim filed by Tippett and Wood, and the facts as agreed upon by counsel are in substance these: Tippett and Wood on March 30, 1911, offered to erect an iron water tower on land of the company, and on May 19, 1911, a formal contract was made with the company for the work, with a provision that no right or title to the tower should pass to the company, or to any other person, until it was fully paid for in installments, and in default of payments the seller could enter on the land and remove the tower. On June 1, 1911, the company, the vendee, made a mortgage of all its property, including all it should thereafter acquire, to secure the payment of bonds of the company to be issued, and certain bonds were so issued. In their briefs it is stated by counsel, both for Tippett and Wood and for the receiver that the mortgage contained the clause as to the after-acquired property, and it is, therefore, taken to be a fact in the case. During July, 1911, the tower was erected to be used in connection with the plant for furnishing water to the town of Frederica and its inhabitants. The tower was unenclosed by a building and was erected upon cement blocks imbedded in the earth, with iron bolts in the cement, by which the iron frames supporting the tower were attached to the cement foundation blocks. If the tower shall be removed there will not be remaining sufficient property covered by the mortgage to pay the bonds secured by the mortgage. Payment of part only of the purchase price has been made. By its claim the company sought to exercise its

right to remove the water tower. To this the receiver objects on the ground that the vendor had waived or lost any right to remove the property, which had become a part of the plant and subject to the debts of the company, with no priority or preference to the vendor.

In brief, then, a water tower was erected on land of a corporation organized to supply water, and became a part of the plant, it being agreed between the vendor and vendee that title to the tower should remain in the vendor until payment be made, with a right to remove the tower upon default. After the contract was made, and before the structure was built, the vendee mortgaged the land and all that should thereafter be erected thereon. The tower rests on and is bolted to foundations of concrete. If the tower be removed the security of the mortgage will be impaired. The water tower, or stand pipe may be removed without injury to the freehold. Should the vendor be authorized to remove the tower prior to a sale thereof by the receiver as part of the plant for supplying water? This question is to be determined as though raised between individuals, for the possession taken by the receiver is only that of the court, whose officer he is, and he takes what the corporation had and no more. Furthermore, the court is adjudicating legal rights.

From the facts agreed upon it is clear that the tower did in fact become a fixture, meaning thereby that it became a part of the real estate, even though it rested on and was bolted to a cement foundation. All the cases in Delaware sustain that proposition, and it is not necessary to cite more than the case of *Equitable Guarantee & Trust Company v. Knowles*, 8 *Del. Ch.* 106, 67 *Atl.* 961. See, also, *Tippett, et al., v. Barham,* 180 *Fed.* 76, 37 *L. R. A.* (*N. S.*) 119, which case related to a standpipe, or water tank, erected under circumstances like those in the case under consideration. Furthermore, there is clear evidence of an intention by both vendor and vendee that the tower should be permanently a part of the water plant and property of the vendee in case it be paid for. In this respect the case is different from one where the lessor gives his lessee the right to erect on the leased premises, and remove during

the term, trade fixtures which but for that relationship would become a part of the realty.

The case of *Equitable, etc., Co. v. Hukill, ante p.* 88, 85 *Atl.* 60, was such a case. In that case the right of the lessee to remove a building during the term was held to constitute necessarily a legal implication that the annexation of the building to the land was for a temporary and not a permanent purpose, for the use of the tenant only, and not for the landlord, and, therefore, the principles established in Delaware in the case of *Watertown, etc., Co. v. Davis,* 5 *Houst.* 192, did not apply. To this extent there is perhaps in the later case a relaxation of the rigor of the ancient common law maxim *quicquid plantatur solo, solo cedit.* The later case is not inconsistent with the earlier one.

In the case now before the court a question is raised for decision for the first time in this State. It is true that the case of *Watertown, etc., Co. v. Davis* is usually cited as and considered an authority for the proposition that personal property annexed to land, and thereby becoming a fixture, is subject to the lien of a mortgage of the land existing at the time of annexation, though the vendee and vendor had agreed as part of the contract of sale that the title to the chattel should remain in the seller until the purchase price be paid, and that the seller, as against the mortgagee, lost a contract right to remove the fixture in case of non-payment. It is also true that there is language which supports clearly that proposition. But it is not at all clear that the question was properly raised or decided in that case, and the language referred to was *obiter.* In that case the land had been mortgaged at the time the machinery was sold to the mortgagor. After it was erected on the mortgaged premises notes were given in payment for the price, and subsequently the agreement was made between the mortgagor of the land and the seller of the machinery that the title to the chattel should not pass until the price be paid. Therefore there was a time after the machinery was erected on the mortgaged premises when there was no restriction as to the passing of title. In such situation, even as between the mortgagor and the vendor, the general well established rule applied,

and the annexation constituted the machinery for all purposes, and as to everybody, a part of the realty subject to the lien of the mortgage. The right of a vendor under a conditional sale must either antedate or accompany the acquisition of title, for if the property passes to the vendee, even for a short time before the right can attach, the lien of the prior mortgage attaches. *Knowles Loom Works v. Ryle*, 97 *Fed.* 730; 2 *Machen on Corporations*, §1908.

The case of *Watertown, etc., Co. v. Davis*, was correctly decided, though for a reason which did not apply. It should be observed that the questions there involved were raised during a trial before a jury, and it appears from the report of the case that in preparing the charge of the court the two judges who sat did not have the benefit of consultations among themselves as to the charge. Under such circumstances, I do not feel bound in this case by the *dicta* in that case, though my respect for the legal ability of the judge who wrote the charge to the jury is great. This case has not been cited in any reported case in this State where the questions here raised were for decision. In the case of *Equitable, etc., Co. v. Hukill, supra*, I assumed without critical examination that it was properly an authority for the proposition referred to by me in that case.

Too much care cannot be taken in ascertaining in every case cited as an authority the facts which the court had before it and the actual decision rendered, aside from the observations of the court applicable to other facts not before it. A court can decide only the case before it. Anything else is unauthoritative, however valuable otherwise. "The real doctrine of a case is found, then, not in what the court said, but in what the court decided." Even if the cited case be a clear authority for the principle for which it is cited, I would be unable to follow it in this case. I am compelled, therefore, to look elsewhere than to the decisions of the courts of Delaware for authority on the points here raised.

In the case of *Equitable, etc., Co. v. Hukill, supra*, I gave careful consideration to the questions here raised, as well as those raised there, and the results of my study as there stated are unchanged after a careful re-examination of the authorities

and a re-consideration of the various conflicting opinions of other courts. I cannot assent now, any more than I could on the prior examination of the law, to the doctrine of the Massachusetts courts, fortified though it is by the decisions of the Federal courts and of courts of high standing in other states. I re-affirm my view, that if the value of the original security for the payment of the mortgage debt is not affected by the removal of the fixtures, then the mortgagee has no rights as against the vendor under a contract of conditional sale. I have no difficulty in holding that as to some persons a certain movable thing is personalty, while as to others it is realty. I am also convinced that the mortgagee has no claim to security in which he has placed no reliance as against one who has placed reliance on such security, viz., the vendor under a contract of conditional sale. If, as is everywhere conceded, chattels which both the vendor and vendee thereof intend shall become a fixture, may pursuant to their contract and as between them retain in legal contemplation the characteristics of a chattel, with a right of removal thereof from the land, it is not illogical or unreasonable to extend the principle to all who claim under the vendee, such as a prior mortgagee of the land, provided the rights of the mortgagee existing when the contract between the vendor and vendee was made be not affected thereby.

There are many cases which hold varying views respecting conditional sales, and some of them have been cited by me in the case referred to. A copious note to *Tippett, et al., v. Barham*, in 37 *L. R. A.* (*N. S.*) 119, contains many of the cases on all sides of the question, and they need not be commented on here.

I do not consider that the vendor of the water tower was bound to inquire as to the existence of a mortgage or other lien on the land. *Cochran v. Flint*, 57 *N. H.* 514, 546. At the time the contract was made there was none. The vendors thereby assumed an obligation to erect the standpipe, mortgage or no mortgage. Besides, they relied on their contract for their security. Not only is this the more equitable rule, but it is the wisest, in my opinion. It enables one by such a

contract to enlarge his business plant, though it be already encumbered by a mortgage, for if he be unable to so buy, he must either obtain the consent of the mortgagee, or pay off the mortgage, either of which things may be impossible. As an aid to commercial development, without injury to the existing rights of a mortgagee, this principle is to be commended, and is fundamentally rational.

It remains to consider the effect of the clause in the mortgage making all after-acquired property subject to the lien thereof. Clearly the standpipe would come within the terms of that provision, for it was incorporated into the plant for supplying water and became an important and probably an indispensable part of it. As before stated, counsel agree that such a clause existed, though the exact terms thereof are not stated. It is sufficiently stated, however, to be the basis of a decision. Counsel for Tippétt and Wood assert that the mortgage containing such a clause does not give the mortgagee a superior claim to chattels subsequently annexed to the mortgaged real estate as against the vendor by conditional sale contract, for the reason that the clause attaches only to such interest as the mortgagor acquired, and the mortgagor not having acquired title to the property of which he obtains possession under a conditional sale contract, the mortgagee could not obtain a lien thereon by such clause, at least superior to the right of the vendor. In support of this certain cases are cited.

The usefulness of the after-acquired property clause has been demonstrated in practice, and the validity thereof in mortgages made by public service corporations, speaking generally, established by the courts. 2 *Machen on Mortgages*, §§1853–1858. The validity of such a clause in a mortgage made not by a corporation, but by an individual has been questioned, though the question is not applicable here.

It is settled, too, that holders of bonds secured by a mortgage with such clause take such after-acquired property subject to any liens or equities with which it is impressed when it comes into the company's hands. 2 *Machen on Mortgages*, §1906. Respecting the effect of the clause, the Supreme

Court said: "That doctrine is intended to subserve the pur-
poses of justice and not injustice." This is obviously true as
to liens of record. It is also true of other liens not of record,
e. g., a vendor's lien. *U. S. v. New Orleans, &c., R. R. Co.*, 12
*Wall.* 362; *Fosdick v. Schall*, 99 *U. S.* 235, 250, 251. So if a
corporation purchase chattels and give back a chattel mort-
gage for the purchase price. *Hand v. Savannah, etc., Co.*, 12 *S. C.*
314, 364–365. This applies *a fortiori* to conditional sale. 2
*Machen on Corporations*, §1906; *Fosdick v. Schall*, *supra;*
*Fosdick v. Car. Co.*, 99 *U. S.* 256; *Wood v. Holly Mfg. Co.*, 100
*Ala.* 326, 13 *South.* 948, 46 *Am. St. Rep.* 56 (1893); *Cox v.
Newbern, etc., Co.*, 151 *N. C.* 62, 65 *S. E.* 648, 134 *Am. St. Rep.*
966, 18 *Ann. Cas.* 936 (1909); *Meyer v. Car. Co.*, 102 *U. S.* 1;
*McGourkey v. Toledo, etc., Co.*, 146 *U. S.* 536, 551–553; *Meyer
v. Johnston*, 64 *Ala.* 603, 670, 671; *Davis v. Bliss*, 187 *N. Y.*
77, 79 *N. E.* 851, 10 *L. R. A.* (*N. S.*) 458 (1907); *Washington,
etc., Co. v. Morse Iron Works, etc., Co.*, 106 *App. Div.* (*N. Y.*) 195,
94 *N. Y. Supp.* 495 (1905). But it is by some courts held that
this principle does not apply where the after-acquired property
is annexed to realty covered by a prior mortgage. *Union Trust
Co. v. Southern, etc., Co.*, 166 *Fed.* 193. *In re Williamsburgh
Knitting Co.*, (*D. C.*) 190 *Fed.* 871; *Tippett, et al., v. Barham*,
180 *Fed.* 76, 103, 37 *L. R. A.* (*N. S.*) 119. The cases in the
Federal courts are largely cases of so called car trusts, whereby
railroad companies acquire rolling stock equipment, the title
to which is vested in a trustee until the purchase price be paid;
but they are generally treated as conditional sales, and the
principles relating to the after-acquired property clause have
been considered applicable to them. In the Federal courts the
distinction is clearly made between rolling stock and other
clearly movable property on the one hand, and bridges, rails
and other property which on the other hand become actually
annexed to the real estate. This distinction is consistent with
the adoption of the Massachusetts rule. But if that rule be
rejected, then the reasoning of the rule as to movable property
is equally applicable to all after-acquired property, and any
right, or lien, actually existing in favor of the vendor at the
time of the acquisition of the property by the mortgagor is

preserved against the mortgage created prior to that acquisition. The same result would have been reached in the cases in the Federal courts even if there had been no clause as to after-acquired property in the mortgage. This is the view of the annotator of the note to *Tippett, et al., v. Barham*, in 37 L. R. A. (*N. S.*) 119. It is evidently the view of the author of 2 *Machen on Corporations*, §1907, for he says that the rights of the mortgagee, as against a vendor of a conditional contract of the sale, "are not derived from the after-acquired property clause, but from the common law principle that chattels so annexed to the freehold as to become part of the realty belong to the owner thereof and are included in any lien thereon."

The conclusion on this point is that the rights of the claimant, the vendor, are not affected by the clause as to after-acquired property, and that that provision did not give the prior mortgagee a right, or interest, in the standpipe other than that which the mortgagor acquired, and as the mortgagor took no title until payment be made of the purchase price, no lien thereon was acquired by the mortgagee until payment be made.

Concretely the principles here announced are these: When chattels intended to become fixtures on land are sold with a reservation in the contract of sale of the title in the vendor to secure payment of the purchase price, the vendor does not lose his right by an annexation of the chattel to the land, even as against a mortgagee whose lien on the land existed at the time of the annexation, though not when the contract of sale was made.

The rights of a vendor under such a contract of sale are not affected by a clause in the mortgage subjecting to the lien of the mortgage property acquired by the mortgagor after the making of the mortgage, for the rights of the mortgagee are no greater than those of the mortgagor.

I feel called upon to remark that in other states contracts of conditional sales, with their secret liens and undisclosed rights and equities, have been regulated by statutes which require that they be recorded, and this seems wise for the protection of persons subsequently dealing with the vendee as creditors, or otherwise, without notice of the terms of the sale.

I am of the opinion that Tippett and Wood are not entitled to be paid all of the portion of the purchase price still due for the water tower in preference to the holders of bonds of the Frederica Water, Light and Power Company. By their contract under which they reserve the title to the property until it is paid for, the vendors were given the right to enter upon the premises of the vendee and remove the water tower, and under the claim which they have filed they ask leave to do so. This seems clearly to be the limit of their right. The decree will, therefore, be entered pursuant to this opinion, and priority of payment will not be granted.

Manifestly, however, it will be for the interests of all parties that the water tower should be sold as a part of the plant, and it is suggested that by agreement it be valued and that the price at which it is valued be paid to the vendor from the proceeds of sale.*

*NOTE. The agreement suggested in the opinion was adopted by the parties, and the whole plant, including the water tower was sold as a whole and the agreed value of the water tower paid to Tippett and Wood.