KEIL MOTOR COMPANY, a Corporation of the State of Delaware, v. HOME OWNERS LOAN CORPORATION, a Corporation of the United States of America.

324

 

(*December* 8, 1941.)

RODNEY and SPEAKMAN, J. J., sitting.

*Keil and Keil* for plaintiff.

*W. Thomas Knowles* for defendant.

Superior Court for New Castle County, No. 38, March Term, 1940.

Rodney, J., delivering the opinion of the Court:

The pertinent provision of the statute is Section 5957 of the Revised Code of 1935, which, in part, provides:

"* * * If the goods are so affixed to realty at the time of a conditional sale or subsequently as to become part there-

of but to be severable without material injury to the freehold, the reservation of property shall be void after the goods are so affixed as against subsequent purchasers of the realty for value and without notice of the conditional seller's title, unless the conditional sales contract, or a copy thereof, together with a statement signed by the seller briefly describing the realty and stating that the goods are or are to be affixed thereto, shall be filed before said purchase in the office where a deed of the realty would be recorded or registered to effect such realty. * * *"

The facts of the case bring into sharp conflict the claims of the mortgagee and of the conditional vendor. A determination of these conflicting claims must include a construction of Section 5957 of the Revised Code of 1935. That section, as we have seen, covers the rights of parties where goods are to be affixed to realty in such a manner as to be severable "without material injury to the freehold."

The facts of the case therefore raise five questions for determination:

1. What is meant by the term "without material injury to the freehold?"

2. What effect is to be given to the fact that the new boiler burner unit replaced an old boiler which was removed from the premises?

3. What effect is to be given to a provision in a mortgage ante-dating a conditional sale of heating apparatus where such prior mortgage purported to cover "all heating * * * fixtures and equipment now or hereafter attached to or used in connection with the real estate herein described"?

4. Whether the record of the conditional sales contract in the present case, or the refinancing of the same, was properly made.

5. Whether the validity of the conditional sales contract in the present case was destroyed by lapse of time.

These questions will be briefly considered in their order.

█ 1. The answer to the first question while interesting and important need not be greatly elaborated. At common law when goods were used in connection with realty the effect of such use was largely determined by the law of fixtures. If the goods were not affixed to the realty they remained personal property and were removable as such; if the goods were closely united or securely attached to the freehold they lost their separate existence and passed with the freehold.

█ When the Conditional Sales Act was adopted it was intended that some personal property theretofore considered as fixture by reason of its connection with the freehold, shou'd retain its character of personalty. It was therefore provided by Section 7 of the Act (Section 5957 of the Revised Code of 1935) that goods affixed to the realty, but removable "without material injury to the freehold" should be the subject of reservation of title by the vendor of such goods as against the owner of the freehold, and other persons, the varying claims of the owners or other persons (purchasers or otherwise), being affected by the different requirements as to the notice of the conditional sale. In the present case the question arises between the conditional vendor on the one hand and a prior mortgagee which subsequently became the purchaser at the foreclosure of its own mortgage.

We shall confine our consideration to those cases which construe the rights of the parties under the conditional sa'es contract providing for the removal of chattels where it may be done "without material injury to the freehold." In such

cases, assuming the personal property has not become so attached to the freehold as to become an integral part thereof, the authorities generally may be divided into two classes,

(a) Those cases which hold that the words "material injury to the freehold" mean physical injury to the building or structure to which the chattel has been annexed.

(b) Those cases which hold to the institutional theory that a chattel which has been attached or annexed to a freehold and is of such a nature as to be necessary to the completeness of the structure, having regard to its character and functions, becomes a part of the freehold, and if the severance will prevent the structure being used for the purposes for which it was adapted, then the article is not severable without material injury to the freehold.

The authorities upon the present subject are of such number that it seems unnecessary to enter into any extended consideration of the individual cases, but merely to indicate where these authorities may be found, and to adopt that rule which in our judgment is more consonant with reason and with policy. Comprehensive annotations listing most of the authorities may be found in 13 *A.L.R.* 460; 73 *A.L.R.* 755; 88 *A.L.R.* 1324; 111 *A.L.R.* 372.

One of the purposes of the Conditional Sales Act was the protection to be accorded to the parties to the Conditional sales agreement who had complied with its terms. To that extent, at least, the words of the Act "without material injury to the freehold" must be construed with chief reference to the Conditional Sales Act itself, and to advance the obvious purposes of it.

Our views are in accord with what we think is the great current of authority, namely, that the term "material injury to the freehold" means physical injury to the building or structure, and not merely the deprivation of

things which may be advantageous or even essential to the usefulness or functioning of a plant or building.

■ The intention of the Conditional Sales Act was to perpetuate the common law rule that removal of fixtures would not be allowed where the article conditionally sold was so closely incorporated with or into the realty that removal would materially injure the structure (*Bogert Commentaries on Conditional Sales,* 2a *U.L.A.* 98-99, *Section* 66). The converse is also true. A removal was contemplated when such removal could be made without serious or material injury to the freehold. *Harvard Financial Corporation v. Greenblatt Const. Co.,* 261 *N. Y.* 169, 184 *N.E.* 748; *Peoples Savings & Trust Co. v. Munsert,* 212 *Wis.* 449, 249 *N.W.* 527, 250 *N.W.* 385, 88 *A.L.R.* 1306.

Aligned in the minority, and as a supporting so-called institutional theory, are New Jersey, Pennsylvania and California.

In New Jersey the development of the institutional theory has not been altogether consistent. Former decisions were in harmony with the majority rule, or limited the character of the chattel or the nature of the building to which the institutional theory would apply. *Bank of America Nat. Ass'n v. LaReine Hotel Corporation* (1931) 108 *N.J.Eq.* 567, 156 *A.* 28; *Reliance Building & Loan Ass'n v. Purifoy,* (1932) 111 *N. J. Eq.* 575, 163 *A.* 151; *Arlotto v. Hauck Realty, Co.,* (1935) 177 *A.* 691, 13 *N. J. Misc.* 305; *Smyth Sales Corporation v. Norfolk B. & L.,* (1936) 116 *N.J.L.* 293, 184 *A.* 204, 111 *A.L.R.* 357, however, seems general in its terms. This latter case would seem to make the institutional theory the prevailing rule in New Jersey, in every situation, but the more recent cases in the Court of Chancery seem to again favor the majority rule and do not follow the institutional theory. *Provident B. & L. Ass'n v.*

*William Day Sons Realty Co.*, (1937) 122 *N. J. Eq.* 326, 194 *A.* 53, and *Sunshine B. & L. v. Meola*, (1937) 122 *N. J. Eq.* 381, 194 *A.* 251. See also 25 *Cornell Law Quarterly.* 324.

In Pennsylvania the institutional theory has been approved in *Central Lithograph Co. v. Eatmore Chocolate Co.*, 316 *Pa.* 300, 175 *A.* 697; *Land Title Bank & Trust Co. v. Stout*, (1940) 339 *Pa.* 302, 14 *A.* 2d 282; *Medical Tower Corporation v. Otis Elevator Co.*, (3 *Cir.*, 1939) 104 *F.* 2d 133.

These cases were based upon the statutory law prior to the amendment of 1935. This amendment seems to make physical damage to the freehold the real test of removability, and would seem to amount to a legislative abrogration of the institutional theory. See 90 *U. of P. Law Review* 77 (Nov. 1941).

We see little to commend itself in the institutional theory. Assuming that the chattel is removable without material physical injury to the freehold, we have little to concern us in the law of fixtures—all that is concerned is the law of conditional sa'es. The owner has agreed that the chattel shall retain its character as personalty, and if it can be removed without material physical damage, then a prior mortgagee, by the removal has lost no security that he had when he took his mortgage, or that he had prior to the time the chattel was added to the freehold. We fail to see why he should gain additional security installed entire'y at the expense of the conditional vendor. See 22 *Cornell Law Quarterly* 421.

' 2. We shall but briefly consider the effect to be given to the fact that the new heating unit replaced an old boiler, which was removed. While there is some diversity of opinion, we think both reason and anthority accord to this objection the realistic test as to whether or not the security theretofore held by the prior mortgagee had been

decreased by the removal of the old accessory and installation of the new one. In the present case the testimony was that the old boiler was practically worthless—not worth the cost of removal. In *Lumpkin v. Holland Furnace Co.*, 118 *N.J.Eq.* 313, 178 *A*. 788, the Court held that a heating plant, in this climate, is as essential as doors and windows, and that a new heating plant could not be substituted for an old one and still retain its character as a chattel which could be removed without doing material damage to the freehold. We think the Court must have been concerned with an old heating plant which was duly functioning. If the old heating plant had in fact no value as a heating plant, and was not able to be operated, then its removal could have had no effect upon the security of the mortgage, and surely the prior mortgagee should not benefit and obtain entirely new heating equipment because the conditional vendor, by the installation, had reinstated the freehold as a habitable dwelling. See Annotations, previously cited.

3. The "after acquired" property clause such as contained in the present mortgage cannot affect the claim of a conditional vendor of a chattel which can be removed without material physical injury to the freehold. If the chattel sold under the conditional sale can be removed without material damage and remained a chattel, and did not become a part of the freehold, then a prior mortgagee of the real estate can acquire no rights by virtue of the "after acquired" clause. The mortgagee could have no greater rights than the mortgagor had or could have had at some state in the proceedings. *In re Frederica Water, Light & Power Co.*, 10 *Del. Ch.* 362, 93 *A*. 376.

4. In the present case we have determined that the burner could in fact be severed without material injury to the freehold. Under these circumstances we must consider the requirements of recording of the conditional sales

agreement. The original agreement had been executed September 25, 1936, and recorded the following day. At that time the real estate mortgage, which was afterwards foreclosed, had been of record since June, 1934. In 1938 a new refinancing of the conditional sales contract was entered into, and the validity of this refinancing contract might be material if brought into question by any subsequent purchaser or mortgagee, for value. The statute, *Revised Code of 1935*, Section 5957 (Section 7 of the Act), provides for notice as "against subsequent purchasers of the realty for value and without notice of the conditional seller's title."

It is quite apparent to us that questions of the validity of the filing of the refinancing agreement are not material in the present case. Recording of the original agreement would be unnecessary insofar as the present parties are concerned, and the refinancing agreement is in the same category. *Holt v. Henley*, 252 *U. S.* 637, 34 *S.Ct.* 459, 58 *L.Ed.* 767; *American Laundry Mach. Co. v. Larson*, 217 *Wis.* 208, 257 *N.W.* 608; *Standard Dry Kiln Co. v. Ellington*, 172 *N.C.* 481, 90 *S.E.* 564; *Prudence-Bonds Corporation v. 1000 Island House Co.*, 141 *Misc.* 39, 252 *N.Y.S.* 60, and the cases collected in 13 *A.L.R.* 454; 73 *A.L.R.* 753; 88 *A.L.R.* 1321; 111 *A.L.R.* 367.

5. The defendant urges our consideration of Section 5961, *Revised Code* of 1935 (Section 11, Collectional Sales Act). Under this section the defendant claims that a conditional sale is valid for a period of only three years, unless refiled. This section provides

"The filing of conditional sale contracts provided for in Sections 5, 6 and 7 shall be valid for a period of three years only. * * * The validity of the filing may in each case be extended for successive additional periods of one year from the date of refiling * * *."

It is unnecessary to extend our consideration of this contention. It has been uniformly held that the purpose of the quoted section is the protection of subsequent purchasers for value, and to obviate the necessity of an examination of the records for a period of more than three years, by such persons. The purpose and effect of the statute is directly related to the question of notice of the conditional sale. For this reason and the reasons heretofore considered, the cited section has no application to the present case.

Judgment will be entered in accordance with this opinion and in conformity with the agreed statement of facts.